Stella WEISS a/k/a Stella Ydowitz,
Plaintiff,

v.

DREW NATIONAL CORPORATION
et al., Defendants.

No. 75 Civ. 4816.

United States District Court,
S. D. New York.

May 28, 1976.

Arthur N. Abbey, New York City, for plaintiff.

Cole & Deitz and D'Amato, Costello & Shea, New York City, for defendants.

## MEMORANDUM

STEWART, District Judge:

Plaintiff, Stella Weiss, has moved for certification of her action, *Weiss v. Drew National Corporation, et al.*, as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure ("F.R.Civ.P."). Named as defendants are Drew National Corporation ("Drew"), Hertz Herson & Company, the auditors of Drew National Corporation, and some former officers and directors of Drew, including Harold Aibel, Lawrence Aibel, James Corines, Norman Elson, Murray Gaines, Harry L. Goldberg, Herbert Krasnow, Lewis C. Leighton, I. H. Plone, Jerry Pressman, Sol Schalman, Seymour Schwartz, Michael J. Maloney and Leigh J. Abrams. Plaintiff seeks to represent those who purchased common stock of Drew from January 2, 1971 to January 9, 1975, a period in which defendants allegedly defrauded purchasers by a continuing conspiracy to falsify Drew's financial statements. Plaintiff claims that defendants' conduct violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10(b)–5, promulgated thereunder and constitutes common law negligence, fraud, and deceit.

Stella Weiss bought 1,000 shares of Drew on April 13, 1972. She continues to retain her shares, for which she paid $12.00 per share. Drew's stock was suspended from trading on the exchange on January 9, 1975; when traded on January 8, 1975, the stock was valued at $.50 per share.[1] Weiss contends that she, and all who purchased Drew shares from January 2, 1971 (when Drew made public its 1970 financial statement) to January 9, 1975 (when trading was suspended), bought the stock at an artificially inflated price. Weiss claims that defendants conspired throughout this period to raise the market price and that, to effec-

1. Drew filed petitions for arrangements under Chapter XI of the Bankruptcy Act in August of 1975.

tuate their conspiracy, all defendants either participated directly, aided and abetted, or knew of the issuance of a "series of related annual and interim false public statements concerning the affairs of Drew Leasing . . . ." [Plaintiff's Reply Memorandum of January 20, 1976 at p. 6].

Plaintiff, taking much of her information from SEC proceedings which were instituted against some of the defendants [See Exhibits 1–3, annexed to Abbey Affidavit of Jan. 20, 1976], advances two principal bases for her contention that defendants engaged in a continuing course of conduct designed to artificially inflate the price of Drew's stock. First, Weiss alleges that Drew's financial statements of 1970, 1971, 1972, and 1973 contained material misstatements about the profitability and the later sale of a 75% owned subsidiary of Drew, Drew National Leasing Corporation ("DNL"). According to plaintiff, the 1971 statement erroneously reflected a sale of all the DNL stock which did not in fact occur until sometime in 1972. Further, press releases issued by Drew between September of 1971 and August of 1972 allegedly misled the public by claiming that the divestiture of DNL, which had not in fact occurred, was advantageous to Drew. Finally, Weiss claims that, when Drew informed the public of the rescission of the DNL stock sale, it gave misleading and inaccurate information as to the reasons for the rescission. Plaintiff also claims that, in all the four financial statements, proper accounting procedures were never followed and past errors of accounting were never acknowledged.

As a second element of the alleged conspiracy, plaintiff traces a series of other statements which are alleged to have misrepresented Drew's finances. Included among these items are overstatements of Drew's income, improper accounting treatment of collection commissions and deferred compensation, improper tax treatment accorded to certain income, and failure to record losses properly. In further support of her claim of earlier misstatements, Weiss relies upon the restated earnings filed with the SEC by Drew in September of 1975. [See ¶ 60 of the complaint].

Defendants argue that class certification is not proper here; they contend that plaintiff has failed to establish that common questions exist, that such questions predominate over individual questions, and that her claims are typical of, rather than antagonistic to, the claims of others who purchased within the time period of the proposed class. Defendants argue that plaintiff's claims, which involve allegations of a conspiracy[2] over a period of four years and of misrepresentations which appear in several documents, are inappropriate for class certification: Further, defendants insist that plaintiff Weiss has an interest in proving inaccuracies in the financial statements of 1972, while other members of the proposed class, who purchased stock at a subsequent time, would benefit from proof of misrepresentations in statements or press releases after 1972.

We do not agree with defendants that the duration of the alleged conspiracy or the numerosity of the written statements involved defeat the propriety of class certification. Rather, as a growing number of courts have recognized, where plaintiff claims a continuing course of conduct and points to specific and identified documents which are alleged to contain interrelated and cumulative misrepresentations, class certification is proper. *See, e. g., Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), *Aboudi v. Daroff*, 65 F.R.D. 388 (S.D.N.Y.1974), *In re United States Financial Securities Litigation*, 64 F.R.D. 443 (S.D.Cal.1974), *Siegel v. Realty Equities Corp.*, 54 F.R.D. 420 (S.D.N.Y.1972), and *Fischer v. Kletz*, 41 F.R.D. 377 (S.D.N.Y.1966).

Here, as in *Blackie v. Barrack, supra*, plaintiff alleges that a series of financial reports misrepresented the same items, such as the DNL stock sale, and that

---

**2.** Defendant's, Hertz, Herson & Co.'s, motion to dismiss the complaint for failure to plead fraud with particularity [R. 9(b) of F.R.Civ.P.] was denied on May 19, 1976.

the repeated misrepresentations were the common source of an inflated price for each stock purchaser. Further, as noted in *Blackie v. Barrack* [See fn. 19, 524 F.2d at 903], Rule 10(b)–5's prohibitions encompass a course of conduct constituting fraud and thus, even unrelated misrepresentations may be part of a common scheme to defraud and may be attacked in a class action where common questions predominate over individual questions. Here, plaintiff and all in her class will have the same burden of establishing that the alleged misrepresentations which appeared in several documents were part of a common scheme to defraud. *See In re United States Financial Securities Litigation, supra*, 64 F.R.D. at 451 and *Siegel v. Realty Equities Corp., supra*, 54 F.R.D. at 425. Therefore, plaintiff and her class share common questions of law and fact;[3] further, these questions predominate over individual questions, for the bases of the allegations are a "common strand of misrepresentation." *Feldman v. Lifton, supra*, 64 F.R.D. at 545.

We also find that plaintiff has met the Rule 23 requirement that her claims be typical of those in the class. We note that, had plaintiff premised her action upon a charge of nondisclosure, she would have been required to demonstrate that defendants had a duty to disclose information and that the duty had arisen prior to her purchase of stock in April of 1972. Plaintiff would thus have been less concerned with proof that nondisclosures occurred subsequent to her own purchase and therefore plaintiff might have had interests antagonistic to others in the class. *See, e. g., Elkind v. Liggett & Myers, Inc.*, 66 F.R.D. 36, 42 (S.D.N.Y.1975). However, plaintiff's

theory is one of continuing misrepresentation and all within the class share a common and unified interest in establishing misrepresentations throughout the period. Thus, plaintiff's claims are not antagonistic to the class but are typical of the class.[4] Finally, on the basis of the proceedings thus far before this court, we are convinced that plaintiff will adequately protect the interests of the class. Thus, plaintiff has met the requirements of R. 23(a).[5]

In addition to meeting the prerequisites of R. 23(a), we find plaintiff has satisfied the criteria of R. 23(b)(3) and that this action may be maintained as a class action. As noted earlier, we find that class questions predominate over individual questions. In addition, we believe that a class action is a superior method for fairly and efficiently adjudicating the allegations before us. First, members of the class have small claims which they might not be able to afford to prosecute individually. Secondly, there are three other related litigations pending before us[6] which involve the same factual pattern and similar legal contentions. All the parties concur that consolidation for all purposes is appropriate and we so order it. We believe that, by declaration of a class in *Weiss* and by consolidation of the related actions, the questions raised by these cases can be disposed of in an efficient manner which will eliminate the possibility that defendants will be exposed to inconsistent and varying liabilities. Finally, there is no indication at present that the creation of a class in *Weiss* will pose difficult problems of management.

Therefore, plaintiff's motion for class certification is granted. The class is comprised

---

**3.** *Compare* with *Simon v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880 (5th Cir. 1973), in which the alleged misrepresentations were orally made and thus the proposed class members had not relied upon or even heard the same statements, *Miller v. Central Chinchilla Group, Inc.*, 66 F.R.D. 411 (S.D.Iowa 1975), involving a similar situation, *Feldman v. Lifton*, 64 F.R.D. 539 (S.D.N.Y.1974), in which plaintiff failed to specify which of several documents and reports contained the alleged misrepresentations, and *Robinson v. Penn Central Co.* 58 F.R.D. 436 (S.D.N.Y.1973), in which plaintiff failed to advance a unified theory link-

ing diverse activities of defendants which were alleged to have involved fraud.

**4.** If, at a future date, subclasses of purchasers appear to be necessary, modification of the class order is possible.

**5.** The defendants do not challenge plaintiff's claim that the class is sufficiently numerous so as to make joinder impracticable. R. 23(a)(1).

**6.** The other actions are *Shindler v. Drew, et al.*, 75 Civ. 1594, *Kane v. Aibel, et al.*, 76 Civ. 250, and *Mittleman v. Hertz, et al.*, 76 Civ. 2346.

**432**

of all persons who purchased common stock of Drew National Corporation during the period of January 2, 1971 to January 9, 1975. Within 30 days of the filing of this order, plaintiff shall submit a proposed form of notice to the class.

SO ORDERED.