Roger W. KIRBY, Albert M. Toll, C.P.A., P.C. Pension Plan Trust, Albert F. Kinzinger, Jr., and Willard Davis, Plaintiffs,

v.

CULLINET SOFTWARE, INC., and Robert N. Goldman, Defendants.

Civ. A. No. 85–3204–WF.

United States District Court, D. Massachusetts.

June 18, 1987.

Deborah R. Gross and Glen DeValerio, Berman, DeValerio & Pease, Boston, Mass., Steven Hoffman, Stanley M. Grossman and Marc I. Gross, Pomerantz, Levy, Haudek, Block & Grossman, New York City, Herbert Milstein, Cohen, Milstein & Hausfeld, Washington, D.C., Samuel D. Heins, Tanik & Heins, Minneapolis, Minn., Samuel Sporn, Schoengold & Sporn, P.C., New York City, Eugene A. Spector and John F. Innell, Eugene Spector & Assoc., Philadelphia, Pa., for plaintiffs.

Robert S. Frank, Jr. and Mitchell H. Kaplan, Choate, Hall & Stewart, Boston, Mass., and Richard Donahue, Donahue & Donahue, Lowell, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

### I. SUMMARY OF CASE

The plaintiffs allege that during the period May 30, 1985 to August 5, 1985, Cullinet Software, Inc. ("Cullinet") and its president, Robert M. Goldman, engaged in a common course of conduct designed to inflate the market price of Cullinet stock. The plaintiffs rely on three alleged misrepresentations made on May 30, June 17, and during the week of July 15, 1985. The plaintiffs have moved for class certification.

The proposed class representatives are Roger W. Kirby, Albert F. Kinzinger, Jr., Willard Davis, and Albert M. Toll, C.P.A., P.C. Pension Plan Trust. The court finds

that the requirements of Fed.R.Civ.P. 23(a) and 23(b)(3) are met with regard to the plaintiffs Kirby, Kinzinger, and Davis, but not for Toll. Toll's son is one of the class counsel, and Toll appears to rely heavily on him. A finding that Toll is an inadequate class representative will not prejudice the interests of the class, which can go forward without him.

Because none of the plaintiffs purchased after the misrepresentation made during the week of July 15, 1985, the defendants have proposed shortening the class period accordingly. The court finds however that earlier purchasers can properly represent later purchasers where the basis of the class claim is the type of common course of conduct that is alleged in the instant case. Nevertheless the court does not find the class certified to encompass purchasers whose claim is based exclusively on the alleged misrepresentation that occurred during the week of July 15, 1985. The plaintiffs have not contended and the court has not concluded that the plaintiffs are adequate representatives with claims typical of those purchasers relying exclusively on the statement made during the week of July 15, 1985.

## II. FACTUAL BACKGROUND

The plaintiffs identify three statements to support their contention that Cullinet engaged in a course of conduct designed to inflate the market price of its stock. The first statement is a May 30, 1985 press release announcing that Cullinet "expects to grow in its first quarter of fiscal 1986 [May 1 to July 31, 1985] by 30% to 40%" and that it "expects to meet Cullinet's traditional 20% operating margin goal for the quarter...." Complaint ¶ 15. Aff. of Parkinson, Exhibit A.

The second statement is a June 17, 1985 press release in which Cullinet reported that it had achieved 50% sales growth in the fourth quarter of fiscal 1985 and quoted Robert Goldman as saying, "[B]ased on the excellent fourth quarter and fiscal 1985 results, we are confident that in fiscal 1986 Cullinet will continue to exceed industry growth rates." Aff. of Parkinson, Exhibit B. The plaintiffs do not appear to be contesting the accuracy of the 1985 results.

The third statement occurred at a meeting of stock market analysts during the week of July 15, 1985. Although not specifically identified, this statement—or possibly statements—to the stock market analysts was alleged to have "led analysts to continue to believe that Cullinet's first quarter fiscal 1986 revenues would increase 30% to 40% over the prior year's first quarter revenues, that operating margins would be 20% of revenues, and that first quarter fiscal 1986 earnings would increase." Complaint ¶ 17. At the meeting, the 20% operating margin was allegedly characterized as "sacred." *Id.*

The plaintiffs contend the statements were false and misleading:

> The Company did not have sufficient information to justify the 30% to 40% revenue growth projection originally announced on May 30, 1985; rather, the information it did have indicated this projection would not be met.... It was made, reinforced, and never changed throughout the Class period in reckless disregard of significant indications of a considerable decline and slowdown in sales and orders facing the software industry as a whole and Cullinet in particular and an awareness that customers were delaying orders.

¶ 19.

On August 6, 1985, Cullinet revealed that estimated revenues for the fiscal quarter that ended July 31, 1985 had increased 4–5% as compared to the first quarter of the prior fiscal year, and that operating margins would be 13–14%. ¶ 20. Aff. of Parkinson, Exhibit C.

The day after this disclosure, the market price of Cullinet stock fell from $24 to $18. Aff. of Parkinson, Exhibit E.

The complaint alleges securities fraud in violation of § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5. 17 C.F.R. 240. 10b-5. Defendant Goldman is charged as a "con-

trolling person" of Cullinet within the definition of § 20 of the Exchange Act, 15 U.S.C. § 78t.

The plaintiffs proposed class is defined as follows:

All persons who purchased Cullinet Software, Inc. ... common stock in the period May 30, 1985 and August 5, 1985, inclusive, and who were damaged as a result thereof, excluding Cullinet and defendant Goldman and officers, directors and senior management employees of Cullinet, and members of their immediate families.

Plaintiff's Memorandum of Law In Support of Joint Motion for Class Certification at 1. At the hearing on the motion for class certification plaintiffs' counsel made clear that the class is alleging injury based on a common course of conduct.

As alleged in the complaint, during the class period Cullinet had over 30 million shares of stock outstanding, held by over 3000 shareholders, geographically dispersed. Complaint ¶ 12(a). Trading in the class period is alleged to have been "very active." ¶ 12. More than nine million shares of Cullinet common stock were allegedly traded. ¶ 12.

There are four proposed class representatives. Plaintiff Roger W. Kirby purchased 500 shares of Cullinet stock on July 12, 1985 at $25⅜ per share. ¶ 7. Kirby Dep.Tr. at 6; Kirby Dep.Tr. exhibits, doc. 16. He based his purchase on two reports published by his broker Morgan, Stanley. Kirby Dep.Tr. at 13. He did not rely directly on any materials or statements issued by Cullinet. *Id.* at 19. Kirby is an attorney with experience litigating securities fraud class actions. According to his affidavit, neither he nor his firm have ever been co-counsel nor have they had a fee sharing arrangement with the plaintiffs' law firms, although "there have been a few cases proceeding on a consolidated or coordinated basis in which my firm and the Pomerantz Levy firm [putative class co-counsel] have each represented our own respective clients...." Kirby Affidavit ¶ 3.

Albert Toll, C.P.A., P.C. Pension Plan Trust, purchased 1000 shares of Cullinet stock on June 11, 1985 at $23½, 1000 shares on June 12, 1985 at $23 and 1000 shares on June 12 at $23¼. Complaint ¶ 7. Toll Dep.Tr. at 76, 89. Toll exhibit n. 14. It is unclear what Toll relied on to make his purchases. It was market information from either his broker Prudential Bache, a news wire, or Cullinet. *See* Toll Dep.Tr. at 29. Toll's son is a partner in one of the law firms seeking to represent the class and has been counseling his father in this case.

Albert F. Kinzinger, Jr. purchased 100 shares of Cullinet common stock on June 3, 1985 at $23 a share. Complaint ¶ 7. Kinzinger Dep.Tr. at 28. Kinzinger relied on his broker's advice to purchase the stock. Kinzinger Dep.Tr. 37.

Willard Davis purchased 100 shares of Cullinet stock on June 17, 1985 at $24½. Davis Dep.Tr. at 50. Davis sold a call at the time he purchased the Cullinet stock. He relied in part on a recommendation in Value Line that Cullinet was a preferred covered call. A person who sells a call sells someone else a right to purchase his stock [at $30 in this case] until a stated date. Davis Dep.Tr. at 49–51.

## III. RULE 23(a) REQUIREMENTS

■ Before a class action may be certified, the four prerequisites of F.R.Civ.P. 23(a)—numerosity, commonality, typicality and adequacy of representation—must be satisfied. Also one of the three requirements set forth in Rule 23(b) must be met.

The party seeking class certification bears the burden of showing that these requirements have been met. *Green v. Johnson*, 513 F.Supp. 965, 974 (D.Mass. 1981). *Baxter v. Minter*, 378 F.Supp. 1213, 1215 (D.Mass.1974).

Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

## A. *Numerosity*

There does not appear to be a dispute over whether the numerosity requirement is satisfied. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification at 15. Cullinet apparently had over 30 million shares of common stock outstanding held by 3000 shareholders of record. Nine million shares were allegedly traded during the class period. As the court said in *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 785 (N.D.Ill.1984), "Though we do not now have before us any information as to the number of persons who bought ... stock during the class period, as opposed to the number of shares traded during that period, we are entitled to make 'common sense assumptions' in order to support a finding of numerosity." *Id. See generally McCuin v. Sec. of Health and Human Services,* 817 F.2d 161 (1st Cir.1987). In the instant case, as in *Grossman,* "an assumption that the class members are not so numerous as to make joinder impracticable would be, in light of the number of shares traded during the class period, ridiculous." *Id. See also Backman v. Polaroid Corp.,* slip op. at 2 (D.Mass. July 16, 1982), (court certified a class in which 1,200,000 shares were traded during the class period). *Markewich v. Ersek,* 98 F.R.D. 9, 10 n. 1 (S.D.N.Y.1982) (claim that 2.5 million shares were traded during class period was sufficient). Apparently, the plaintiffs also do not come from the same geographic area, which also supports a finding that the numerosity requirement is satisfied. *Andrews v. Betchel,* 780 F.2d 124, 132 (1st Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986).

## B. *Commonality*

Rule 23(a)(2) requires that questions of law or fact be shared by the prospective class, but does not require that every question be common. *See Berenson v. Faneuil Hall,* 100 F.R.D. 468, 470 (D.Mass.1984); *Backman, supra,* at 3. The defendants do not seem to contest the commonality of the claims. Defendant's Memorandum in Opposition, *supra* at 15. The common questions include:

(1) Whether the statements and omissions complained of were false and misleading;

(2) Whether they were made with the requisite scienter. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Grossman,* 100 F.R.D. at 785–86;

(3) Whether the statements were material;

(4) Whether the conduct alleged inflated the market price; and

(5) Whether they were part of a common course of conduct designed to inflate the market price of Cullinet stock.

These "questions are illustrative rather than exhaustive, but establish the existence of the commonality required by Rule 23." *Berenson,* 100 F.R.D. at 470.

## C. *Typicality*

As the court stated in *Berenson,*

"Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought. The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct, not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."

*Id.* (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y.1981)).

The defendants contend that the plaintiffs are atypical because "a major focus of the litigation will be on an arguable defense unique to the named plaintiff[s]." *Baum v. Centronics Data Computers,* Fed.Sec.L.Rep. (CCH) ¶ 92,797 at 93,898 (D.N.H.1986). The arguable unique de-

fense is that all of the plaintiffs' representatives are atypical because they did not rely directly on the alleged misrepresentations. The defendants also contend Kirby is atypical because he is a sophisticated investor and Davis is atypical because he sold a covered call.

The fact that the plaintiffs do not appear to have directly relied on the alleged misstatements does not necessarily make them atypical because this class action is based on the "fraud on the market theory." *See generally Blackie v. Barrack*, 524 F.2d 891, 907 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The fraud on the market theory is "specifically aimed at protecting open market purchasers like plaintiff who did not directly rely on any representations regarding the stock." *Abelson and Irving Malis v. Strong*, 644 F.Supp. 524, 528 (D.Mass. 1986).

The rationale of the fraud on the market theory was expressed in *Blackie v. Barrack*:

> A purchaser on the stock exchange may be either unaware of a specific false representation, or may not directly rely on it; he may purchase because of a favorable price trend, price earnings-ratio, or some other factor. Nevertheless, he relies generally on the supposition that the market price is validly set and that no unsuspected manipulation has artificially inflated the price, and thus indirectly on the truth of the representations underlying the stock price—whether he is aware of it or not, the price he pays reflects material misrepresentations. Requiring direct proof from each purchaser that he relied on a particular representation when purchasing would defeat recovery by those whose reliance was indirect.... We decline to leave such open market purchasers unprotected. The statute and rule are designed to foster an expectation that securities markets are free from fraud.

*Blackie v. Barrack*, 524 F.2d 891, 907 (9th Cir.1975).

Although the First Circuit has neither adopted nor rejected the theory, *see generally, Roeder v. Alpha Indus.*, 814 F.2d 22 (1st Cir.1987), the district court in *Abelson* concluded "it constitutes a valid cause of action." *Abelson*, 644 F.Supp. at 528.

The court accepts for present purposes the fraud on the market theory, but does so without prejudice to a later determination as to whether the complaint states a cause of action. A motion for class certification is not the appropriate point at which to resolve the merits of the plaintiffs' claim. *Eisen v. Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). *Grossman*, 100 F.R.D. at 787 n. 4. *See generally Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir.1972). "[T]here is a distinction between identifying the issues that the case will present, for purposes of determining whether the requirements of Rule 23 have been met, and deciding those issues on the merits." *Joseph v. General Motors*, 109 F.R.D. 635, 638 (D.Col.1986).

By basing their claim on the fraud on the market theory, plaintiffs can indicate their typicality by demonstrating that they relied on the integrity of the market. Reliance on the market also includes reliance on "statements of third parties [such as brokers] that merely reiterated, digested, or reflected the misstated [market] information that forms the basis of the securities fraud claims." *Grossman*, 100 F.R.D. at 788. *See also Biben v. Card*, Fed.Sec.L. Rptr. (CCH) ¶ 92,462 at 92,826 (W.D.Mo. 1986) [Available on WESTLAW, DCT database]. "Such a rule is necessary if the salutory purposes of the 'fraud on the market' theory are not to be gutted, for it is likely that many investors rely upon information digested by others and not simply on the market." *Id.* It would not, however, include reliance on "factors wholly extraneous to the market" such as insider information. *Grossman*, 100 F.R.D. at 788.

In the instant case, the court concludes that the named plaintiffs' reliance on brokers, the "wire," or Value Line is reliance

on the "market." This reliance is also typical.

The defendants also claim that the named plaintiffs are atypical at least in regard to purchasers relying on the third misstatement, because all the proposed representatives purchased before the alleged misstatement made during the week of July 15, 1985. The defendants therefore propose that if a class is certified it should be shortened to a period ending before the misstatement made during the week of July 15. The court holds the plaintiffs' claims are typical of later purchasers where the basis of the class claim is the type of common course of conduct alleged in the instant case. Nevertheless, because the question of representation of later purchasers flows over into other Rule 23(a) and (b) issues, it will be addressed in a separate section. *See* Section III.

In addition, Kirby's sophistication does not render him atypical in this case. As the court found in *Backman, supra,* which was a nondisclosure case, "Where ... there is an imbalance of information available to investors on an open market, all such investors are harmed whether they are professionals or amateurs. Sophistication plays no part in reliance or causation where nondisclosures have created an imbalance of information." *Backman, supra.* Similar reasoning has been applied in cases, such as this case, alleging misrepresentation. *Kolin v. American Plan Corp.,* Fed.Sec.L.Rptr. (CCH) ¶ 92,728 (E.D.N.Y. 1986); *Stoller v. Baldwin-United Corp.,* Fed.Sec.L.Rptr. (CCH) ¶ 92,298 (S.D.Ohio 1985) [Available on WESTLAW, DCT database]; *Leist v. Tamco Enterprises, Inc.,* C.A. No. 80 Civ. 4439–CLB (S.D.N.Y. March 16, 1982) slip op. at 5 ("Where the public market of a quoted security is polluted by false information, or where price, supply and demand are distorted as a result of misleading omissions, all types of investors are injured, experienced and inexperienced, smart or stupid."); *Newberg, supra,* at § 22.18 p. 43.

Defendants contend that because Davis sold a covered call he is atypical. Plaintiff sold a call that would give someone else the option of purchasing his stock at $30 a share. Davis Dep.Tr. at 49–51. He bought the stock at $24½. According to his deposition because the stock declined he made about $150 profit on the call, but lost $1900 because of the decline in the value of the stock. Plaintiffs' Rejoinder Memorandum of Law in Further Support of Joint Motion for Class Certification at 26 n. 10. The plaintiffs claim that "the deposition testimony of Davis makes clear that, no less than any other purchaser of Cullinet stock during the class period, his purchase of the stock at an artificially inflated price by virtue of the defendants' misconduct has caused him damage." Plaintiffs' Rejoinder Memorandum of Law in Further Support of Joint Motion for Class Certification at 26.

The court does not find Davis is atypical. He claims to have based his investment decision on the integrity of the market. Also, although his investment strategy was conservative, he was quite typical of the investor who relying on the integrity of the market anticipated the stock would show some growth. The court has found no case law to suggest that covered calls in this context render a representative atypical. Rather, the case law indicates that "investment strategy is of little importance to ... suitability as a class representative." *Kolin v. American Plan Corp.,* Fed.Sec.L. Rptr. (CCH) ¶ 92,728 at 93,541 (E.D.N.Y. 1986). The court notes, however, that if later developments suggest that a subclass of covered call sellers should be certified, such a motion will be considered. *See Grossman,* 100 F.R.D. at 785; *Joseph,* 109 F.R.D. at 638 ("certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits.")

### D. *Adequacy of Representation*

The "[t]wo basic guidelines for meeting the adequacy of representation standard of Rule 23(a)(4) are: (1) the absence of potential conflict between the named plaintiffs and the class members and (2) and assur-

ance of vigorous prosecution." *Berenson*, 100 F.R.D. at 470.

The defendants have raised the issue of potential conflict caused by the relationship between Toll and class counsel. Toll's son is a partner in one of the firms that is counsel for the putative class in this case.

The case law is inconsistent concerning whether a close familial relationship between a proposed class representative and class counsel makes the representation inadequate. *Compare Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir.1977) (brother of class attorney inadequate); *Cohen v. Bloch*, 507 F.Supp. 321 (S.D.N.Y. 1980) (plaintiff inadequate where plaintiff's personal commitment to action doubtful, counsel, who was husband of plaintiffs' stepdaughter, had represented stepdaughter in earlier derivative action, and family relationships indicated that attorney's interest as counsel was real interest in question); *Helfand v. Cenco*, 80 F.R.D. 1 (N.D. Ill.1977) (plaintiffs who have shown no interest in suit and whose son is class counsel inadequate representatives) with *Malchman v. Davis*, 761 F.2d 893 (2d Cir.1985) *cert. denied*, —— U.S. ——, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986) (plaintiffs who are brother of class counsel, sister of chauffeur of class counsel, mother-in-law of class counsel are adequate where depositions revealed that the plaintiffs were "zealous" class representatives); *Fischer v. International Tel & Tel Corp.*, 72 F.R.D. 170 (E.D.N.Y.1976) (plaintiff adequate even though class counsel is his son where there was no indication that the plaintiff would have any financial interest in any fee recovered by son); *Lewis v. Goldsmith*, 95 F.R.D. 15 (D.N.J.1982) (nephew of class counsel adequate).

The instant case presents a father-son relationship in which defendants claim that the father lacks the necessary independent involvement in the case. The two cases most directly on point are *Fischer v. International Tel & Tel supra,* and *Helfand v. Cenco, Inc., supra.* In *Helfand* the court found that the "potential conflict of interest between their representation of the class and the financial benefit which would accrue to a close relative from … [attorneys'] fees generated by these actions disqualifies them as class representatives." *Id.* at 7. In *Fischer,* the court found the representation adequate by defining conflict of interest narrowly, stating: "The court … has determined that the touchstone for denial of class action status in each case (with one exception) is that the plaintiff might have an interest in the legal fees that the attorney might ultimately seek." *Fischer,* 72 F.R.D. at 173. The court in *Fischer* defined conflict of interest in terms of actual monetary benefit—that is financial gain to a marital unit or partners in law firms—rather than the broader interest in a close relative's benefit. *Id.* at 173–74. *Compare Susman v. Lincoln American Corp.*, 561 F.2d at 95 (where the plaintiff did not expect to share in the attorneys' fees, but where plaintiff's possible recovery was "dwarfed" by attorneys' fees which could be awarded to his brother, the court stated "the likelihood of conflict of interest is also supported by 'the natural assumption that brothers enjoy a close personal relationship and, consequently, would be inclined to support each other's interests.' ") This court finds that in the context of this case the *Fischer* court's definition of conflict of interest is too narrow because the father could be unduly influenced by the possible benefit his son receives in attorneys' fees, even if the father does not financially benefit from the fees himself.

The *Fischer* court buttressed its findings that the father of class counsel was adequate with the statement that:

"Any compromise or dismissal of a class action must be approved by the court and notice of the proposed compromise or dismissal must be given to all class members. . . . In [the court's] estimation the safeguard provided in Rule 23(e) against litigation compromises unfair to the class as a whole are adequate to insure protection of class interest under the representation of these named plaintiffs and counsel."

*Id.* (quoting *Umbriac v. American Snacks, Inc.,* 388 F.Supp. 265, 275 (E.D.Pa.1975)).

This court, however, agrees with those decisions that have "noted that such judi-, cial oversight is not a realistic substitute for enforcement of the fair and adequate representation requirement." *Cohen v. Bloch,* 507 F.Supp. 321, 325 (S.D.N.Y.1980); *see also Susman v. Lincoln American Corp.,* 561 F.2d at 95. Rather, the court's task of overseeing the substantive merits of a settlement or compromise of a suit is greatly facilitated by knowing that the procedures designed to assure adequate representation are carefully followed.

In cases where a familial relationship with counsel raises questions about the adequacy of the plaintiff, the degree of concern and involvement demonstrated by the representative becomes especially important. In concluding that the district court had not abused its discretion in finding as adequate representatives plaintiffs who were the brother of class counsel, sister of chauffeur of class counsel, mother-in-law of class counsel and personal friend of class counsel, the Second Circuit emphasized the "zealous" participation of at least some of the named plaintiffs. *Malchman,* 761 F.2d at 899. On the other end of the spectrum, those plaintiffs found to be "remarkably ill-informed" are less likely to be found adequate. *See, Cohen,* 507 F.Supp. at 325; *Helfand,* 80 F.R.D. at 7. *See generally, Newberg,* § 3.34 at 224.

The court finds Toll's deposition indicates he has demonstrated interest in the case. He said he lost a "tremendous" amount of money, Toll Dep.Tr. at 50, and felt as though he had been "done in by them issuing glowing reports." *Id.* at 49. He also attended Cullinet's 1985 annual meeting to find out what happened to his stocks. *Id.* at 47–49. At the same time, however, he relies heavily on his son's judgment. Toll Dep.Tr. at 4, 6, 111, 113, 127. Toll's son has apparently been active in counseling him.

The court concludes that Toll has not met his "burden of convincing the trial court that the mandatory requirements of 23(a)

have been satisfied." *Susman v. Lincoln American Corp.,* 561 F.2d at 90. The closeness of the father-son relationship and the active involvement and heavy reliance on the son create an unnecessary risk of conflict between the representative plaintiff and other class members. Finding Toll an inadequate representative will not prejudice the interests of the class. The class action can go forward without him, the only cost being the breadth of representation.

Defendants also object to the adequacy of Kirby as a class representative. The main thrust of this objection is that Kirby serves in other cases as class counsel with lawyers who propose to represent the class here and, therefore, his interest in a share of the legal fees in those cases exceeds the small recovery he can expect as a plaintiff in this case. According to his affidavit, however, neither Kirby nor his law firm have ever been co-counsel, or had a fee sharing arrangement, with any of the class counsel in this case. ¶¶ 3, 4.

They have also not referred a case, except this one, to class counsel or had a case referred to them by class counsel. ¶ 2. There have been a few cases proceeding on a consolidated basis in which Kirby's firm and the Pomerantz firm have each represented their own respective clients, but no cases in which they have represented the same client. ¶ 3

This is not a case where the class representatives are lawyers in the firm of class counsel, *Turoff v. May Co.,* 531 F.2d 1357 (6th Cir.1976) (plaintiffs found inadequate representatives), sharing the same office, *Kramer v. Scientific Control Corp.,* 534 F.2d 1085 (3rd Cir.1976), *cert. denied,* 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976); *Susman,* 561 F.2d at 95; or even involved in past fee sharing relationships. *See generally, Grossman v. Waste Management,* 100 F.R.D. at 790 (although plaintiff was closely affiliated with class counsel, and had fee-sharing relationships with it in the past, he was still an adequate representative because no fee sharing arrangement in the case and plaintiff understood his role

as client not counsel). There is no indication of any inappropriate interdependence of class counsel and Kirby in the instant case. Kirby is, therefore, an adequate representative.

The second prong of Rule 23(a)(4) requires the party moving for class certification to show "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Co.*, 780 F.2d 124, 130 (1st Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). *See also Berenson*, 100 F.R.D. at 470. This prong of the adequate representation test is not contested in this case. Class counsel are qualified and experienced, and based on the briefs and arguments so far, class counsel appear vigorous.

## IV. RULE 23(b)(3) REQUIREMENTS

Rule 23(b)(3) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The court finds that the common questions of law and fact predominate in this case. The common questions have been described previously in the discussion of Rule 23(a)(2). The major issue suggesting possible individual differences could be important is the reliance question; that is, what alleged misrepresentations did class members rely on to purchase the stock. However, as discussed earlier, the plaintiffs are basing their class claim on the fraud on the market theory, which presents the common question of reliance on the integrity of the market. *See* discussion of typicality, *supra*. Thus, the court finds

that common questions of law and fact predominate.[1]

Rule 23(b)(3) also requires that the court determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In this case, as in *Berenson:*

[t]he benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions, clearly outweigh any problems which may arise in the management of the class action. Economy will undoubtedly be achieved. Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.

*Berenson*, 100 F.R.D. at 471; *See also Newberg*, ¶ 22.38 at 78; *Berman v. Narragansett Racing Association*, 414 F.2d 311, 317 (1st Cir.1969), *cert. denied*, 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681. In securities fraud cases, the class action device has been deemed especially appropriate, and even "indispensable" to protect the small claimants who would otherwise as a practical matter be denied relief. *See Shapiro v. Merrill Lynch, Pierce, Fenner & Smith*, [1975–76] Fed.Sec.L.Rptr. (CCH) ¶ 95,377 at 98,888 (S.D.N.Y.1975) [Available on WESTLAW, DCT database]; *Newberg*, 22.38; *Issen v. GSC Enterprises*, 522 F.Supp. 390, 400 (N.D.Ill.1981).

## V. REPRESENTATION OF THOSE PURCHASING AFTER JULY 15, 1985

■ The defendants contend that the plaintiffs cannot represent those who purchased stock after the alleged misrepresentation made during the week of July 15, 1985, because none of the proposed class representatives purchased after that date. The defendants, therefore, propose that the class period be shortened to from May 15, 1985 to July 15, 1985. The court concludes, however, that earlier purchasers can properly represent later purchasers when the

---

**1.** The propriety of earlier purchasers representing later purchasers in a Rule 23(b)(3) class

action is discussed in Section III.

basis of the claim is the type of common course of conduct alleged in the instant case.

Courts in a number of cases have allowed earlier purchasers to represent later purchasers. *See Markewich v. Adikes,* 76 F.R.D. 68 (E.D.N.Y.1977) (plaintiffs who purchased on January 3, 1973 can represent class purchasing between December 30, 1970 to October 31, 1973; plaintiff who purchased on April 3, 1974 can represent class purchasing from November 1, 1973 to November 25, 1974); *Weiss v. Drew Nat'l Corp.,* 71 F.R.D. 429, 430–31 (S.D.N.Y. 1976) (plaintiff who purchased stock on April 13, 1972 allowed to represent class purchasing between January 2, 1971 to January 9, 1975); *Lewis v. Capital Mortgage Investment,* 78 F.R.D. 295, 299–301 (D.Md.1977) (plaintiff purchasing in June and July of 1974 can represent class purchasing from January 11, 1974 to November 11, 1974); *Muth v. Dechert Price, Rhoads,* 70 F.R.D. 602 (E.D.Pa.1976) (plaintiffs who purchased their shares during the initial public offering can represent class purchasing or selling shares at later times); *Byrnes v. IDS Realty Trust,* 70 F.R.D. 608 (D.Minn.1976); *but see Elster v. Alexander,* 76 F.R.D. 440 (N.D.Ga.1977), *app. dismissed,* 608 F.2d 196 (5th Cir.1979). These, like the instant case, were each Rule 23(b)(3) class actions.

As the court in *Weiss, supra,* stated, "as a growing number of courts have recognized, where plaintiff claims a continuing course of conduct and points to specific and identified documents which are alleged to contain interrelated and cumulative misrepresentations, class certification is proper." 71 F.R.D. at 430. In the instant case, a continuing common course of conduct is alleged. Thus, if the fraud on the market theory is determined to be viable as a matter of law, earlier and later purchasers will "have the same burden of establishing that the alleged misrepresentations which appeared in several documents were part of a common scheme to defraud." *Id.* at 431. Also, the alleged misrepresentations appear to be interrelated and cumulative, thereby further uniting the interest of all purchasers. Finally, the court notes that the less than three month "class period here is limited enough to support the common plan allegations of the complaint without unduly raising individual facts issues." *Biben v. Card,* Fed.Sec.L.Rptr. (CCH) ¶ 92,462 at 92,831 (W.D.Mo.1986) [Available on WESTLAW, DCT database]. Thus, plaintiffs as early purchasers meet the requirements of Rule 23(a) and (b).

## VI. CONCLUSION

For the foregoing reasons, the court hereby certifies a class of all persons—excluding Cullinet, defendant Goldman and officers, directors and senior management employees of Cullinet and their immediate families—who purchased Cullinet software common stock within the period May 30, 1985 to August 5, 1985, and who were damaged as a result of a common course of conduct which began before the week of July 15, 1985.[2] Plaintiffs Roger W. Kirby, Albert F. Kinzinger, Jr., and Willard Davis are hereby designated representatives of this class.

---

**2.** To prevent possible future misunderstanding, the court again notes one group that is not included in the class now certified. The plaintiffs have not sought to represent those purchasers whose claims are based exclusively on the alleged misrepresentation made during the week of July 15, 1985, and who do not allege that this purported misrepresentation was part of a common course of conduct which began earlier. The class now certified does not include purchasers who might base their claim exclusively on the alleged misrepresentation made during the week of July 15, 1985.