W. Curtiss PRIEST

v.

ZAYRE CORPORATION.

Civ. A. No. 86–2411–Z.

United States District Court,
D. Massachusetts.

Jan. 22, 1988.

Glen DeValerio, Deborah R. Gross, Berman, DeValerio & Pease, Boston, Mass., Bernard M. Gross, Jay Sacks Cohen, John P. McCarthy, Gross & Sklar, Philadelphia, Pa., for plaintiffs.

William L. Patton, Paul B. Galvani, John D. Donovan, Ropes & Gray, Boston, Mass., for Zayre Corp.

Gael Mahony, John A.D. Gilmore, Bruce E. Falby, Hill & Barlow, Boston, Mass., for all other defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, a purchaser of Zayre Corporation stock,[1] alleges that the stock's price was artificially inflated as a result of misrepresentations made by the individual defendants, who were corporate officers or directors. The amended complaint contains three counts asserting liability under federal securities law (Count I),[2] and on theories of common law of fraud (Count II) and negligent misrepresentation (Count III).

The case is now before me on plaintiff's motion for certification of a class consisting of purchasers of Zayre common stock from March 1, 1986 to August 5, 1986, who sold their stock after August 5 or continued to hold it after August 5 and were damaged as a result. Excluded from the proposed class are the corporation, its subsidiaries, affiliates and divisions, the individual defendants and their immediate families, and officers and directors of the corporation.

Plaintiff bears the burden of showing that all four of the requirements of Fed.R.Civ.P. 23(a) and one of the standards enumerated under Fed.R.Civ.P. 23(b) are met. *Backman v. Polaroid Corp.*, Civ. Nos. 79–1031–Mc, 79–1284–Mc, 79–1285–Mc, slip op. at 1–2 (D.Mass. July 16, 1982) (McNaught, D.J.). "District courts have broad discretion when determining issues of class certification." *Baum v. Centronics Data Computer Corp.*, [1986–1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,797, at 93,898 (D.N.H. May 15, 1986). [available on WESTLAW, 1986 WL15784].

Rule 23(a) identifies the following prerequisites to class certification:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

The relevant clause of Rule 23(b) requires findings that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Defendants have not disputed the fulfillment of the requirements of Rule 23(a)(1) and 23(a)(2), nor do they contend that the federal claim falls outside the definition of Rule 23(b)(3). Instead, they oppose certification of all three counts by contending that plaintiff is neither typical of the proposed class members nor an adequate representative of them. In addition, they oppose certification of the pendent claims on the grounds that individual questions predominate and that variations in applicable state law will render class treatment unmanageable.

### I. *Federal Claim*

Courts have expressed a general preference for class certification in securities fraud cases, *Baum* at 93,898, based on a

---

1. Marla Sue Winer, named as a plaintiff in the amended complaint, withdrew pursuant to a stipulation filed September 17.

2. 15 U.S.C. § 78j(b) ("Section 10(b) of the Securities Exchange Act of 1934"); 17 C.F.R. § 240.10b–5 (1987) ("Rule 10b–5").

policy favoring enforcement of the federal securities laws, *see Blackie v. Barrack,* 524 F.2d 891, 903, 907 & n. 22, 908 (9th Cir. 1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Green v. Wolf Corp.,* 406 F.2d 291, 299 (2d Cir.1968), *cert. denied sub nom. Wolf Corp. v. Green,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights, *Biben v. Card,* [1985–1986 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 92,462, at 92,824 (W.D.Mo. Jan. 6, 1986) [available on WESTLAW, 1986 WL1199]; *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 137, 149 (D.N.J.1984).

### A. Numerosity and Commonality

■ As noted, defendants do not dispute and I find that the requirements of Fed.R. Civ.P. 23(a)(1) and 23(a)(2) are met. Although the exact number of class members has not been determined, plaintiff's undisputed estimate that shareholders of record of Zayre common stock numbered more than 9,000 during the class period permits the inference that the class is so large that joinder is impracticable. *See Abelson v. Strong,* Civ. No. 85–0592–S, slip op. at 4 (D.Mass. July 30, 1987) (Skinner, D.J.) [available on WESTLAW, 1987 WL15872]; *Kirby v. Cullinet Software, Inc.,* 116 F.R.D. 303, 306 (D.Mass.1987) (Wolf, D.J.). In addition, common questions of law and fact exist in this case regarding:

(1) Whether statements made by defendants contained misrepresentations or omissions;

(2) Whether the alleged misrepresentations or omissions were material;

(3) Whether defendants acted with scienter; and

(4) Whether the misrepresentations or omissions inflated the market price of Zayre common stock.

### B. Typicality and Adequacy

Defendants contend first and most emphatically that plaintiff is an atypical and inadequate plaintiff [3] because he will be subject to unique defenses regarding reliance.[4] They argue both that he did not rely on the documents containing the alleged misrepresentations, and that he relied on extraneous factors. Defendants identify as outside influences the publication *Value Line* and a computer program that incorporated historical data and current price information as well as adjustments for plaintiff's own subjective preferences.

■ To the extent that defendants' reliance argument depends on plaintiff's deposition testimony that he had no specific memory of any of the documents identified in the complaint, but recalled "favorable press," it extends beyond the scope of class certification and into the merits of this litigation. *See Kirby,* 116 F.R.D. at 307; *Data Access,* 103 F.R.D. at 139; *M. Berenson Co. v. Faneuil Hall Marketplace,* 100 F.R.D. 468, 471 (D.Mass.1984) (McNaught, D.J.). Class certification is not an appropriate stage at which to address the merits of the lawsuit. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974).

■ Defendant's contention that plaintiff is inadequate and atypical because his investment strategy was affected by factors other than the misrepresentations and market price reads the adequacy and typicality requirements too strictly, and views investor behavior unrealistically.

[D]iffering types of reliance are present in almost every securities class action. There will always be some individuals who read the financial statements directly, others who read secondary analyses such as Moody's or Value Line, and

---

**3.** The typicality requirement of Rule 23(a)(3) and the adequacy requirement of Rule 23(a)(4) tend to overlap. *See, e.g., DuraBilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 99 (S.D.N.Y.1981).

**4.** The amended complaint pleads both actual reliance on the alleged misrepresentations and reliance on the integrity of the market. I do not at this point determine whether the latter type of reliance is sufficient. *See In re Data Access Systems Litigation,* 103 F.R.D. 130, 138–39 (D.N.J.1984).

many others who relied on the advice of stockbrokers or friends. If defendants' argument were to prevail that factual differences of this nature were sufficient to defeat class action certification, there could never be a class action of securities purchasers.

*Data Access,* 103 F.R.D. at 139 (granting motion for class certification upon finding that difference in reliance did not defeat typicality requirement, without reaching the fraud-on-the-market theory). *See also Green,* 406 F.2d at 301, *Biben* at 92,826 (accepting fraud-on-the-market theory). *But see Masri v. Wakefield,* 106 F.R.D. 322, 325 (D.Colo.1984) (holding that difference in type of reliance defeats typicality and adequacy requirements).

> Reliance on the advice of others will not defeat typicality if the information from the third parties is based on the alleged misrepresentations that form the basis of plaintiff's action.... While plaintiffs may have relied on the advice of others, there is no indication that the recommendations were not based on the alleged misrepresentations and allegedly inflated market price.

*Baum* at 93,898 (accepting fraud-on-the-market theory).

The fact that plaintiff's investment decisions were influenced by his own subjective preferences [5] and determined in part by a computer program incorporating a number of factors does not render him atypical. *See Data Access,* 103 F.R.D. at 139. "With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members." *In re Elscint, Ltd. Securities Litigation,* Civ. No. 85–2622–K, slip op. at 18 (D.Mass. June 22, 1987) (Keeton, D.J.). "The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." *Abelson,* slip op. at 13. For the reasons stated above, questions of individual reliance do not defeat the requirement of typicality for the federal claim, nor do they undermine plaintiff's adequacy as a class representative.

■ In a footnote, defendants contend that plaintiff's sophistication about his investments renders him atypical and an inadequate class representative. This argument fails for reasons similar to those given in regard to reliance. Plaintiff's investment decisions depended on information readily available to other investors and were not based on the type of knowledge available only to an institutional investor, or one who had direct contact with corporate officers. *Elscint,* slip op. at 19 (distinguishing case involving oral misrepresentations). *Cf. Zandman v. Joseph,* 102 F.R.D. 924, 930–32 (N.D.Ind.1984) (finding named plaintiff atypical where he had personal contact with corporate officers, attended special meetings for security analysts, and invested $3 million). Sophistication does not make a plaintiff devoid of protection under the securities laws, *Baum* at 93,899, or immune to injury by misrepresentation, *Kirby,* 116 F.R.D. at 308. *Cf. Backman,* slip op. at 4 (referring to nondisclosure cases).

■ Defendants also attack plaintiff's adequacy as class representative with contentions that his $100,000 in liquid assets do not demonstrate a willingness or ability to cover the costs of litigation, and that he

---

5. Defendants rely on plaintiff's deposition testimony that he favored expanding retail chains. However, the characterization of Zayre as such a chain is itself one of the misrepresentations alleged in the complaint. Furthermore, defendants' reliance on *Abelson v. Strong,* Civ. No. 85–0592–S, slip op. at 17 (D.Mass. July 30, 1987) (Skinner, D.J.) [available on WESTLAW, 1987 WL 15872], for the proposition that a subjective preference for a type of stock defeats typicality is misplaced. *Abelson* referred to the situation where, for example, plaintiff relied "on a general feeling that all energy stocks represent good buys," rather than one where the plaintiff predicated his preference on a particular type of business performing in a particular way. *But see Cohen v. Laiti,* 98 F.R.D. 581 (E.D.N.Y.1983) (denying certification without prejudice in fraud-on-the-market case on finding that plaintiff would be inadequate representative because investment strategy of speculation in inexpensive, lesser known stock with substantial growth potential and reliance on tips and inside information "invited rebuttal of the presumption of reliance").

has relied excessively on his attorneys in preparation of the complaint in this case. "Inquiries into the adequacy of representation should focus on the named plaintiffs' ability to prosecute the action vigorously through qualified counsel and their lack of conflicting interest with unnamed class members." *Elscint*, slip op. at 19. *See also Margaret Hall Foundation, Inc. v. Atlantic Financial Management, Inc.*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,359, at 96,842 (D.Mass. July 30, 1987) (Skinner, D.J.) [available on WEST-LAW, 1987 WL15884] (adding requirement that suit not be collusive). *But cf. Levine v. Berg*, 79 F.R.D. 95 (S.D.N.Y.1978) (finding plaintiff inadequate where she did not look at complaint, remember why or how she bought stock, or know the nature of defendants' business). Plaintiff in this case is represented by able counsel familiar with and experienced in this type of litigation. *See Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 100 (S.D.N.Y. 1981). At his deposition, plaintiff testified that his attorney would advance out-of-pocket expenses. *See Elscint*, slip op. at 21. He also testified that he understood his obligations as class representative, which he enumerated, and that he saw the complaint before it was filed, although he did not request any changes or provide all the information contained in the complaint. A representative need not have personal knowledge of all the relevant facts to be deemed adequate. *See Biben* at 92,827–28; *Data Access*, 103 F.R.D. at 141; *Dura–Bilt*, 89 F.R.D. at 102 & n. 18, 103 (noting conflict among courts on this issue). Under these circumstances, I find that plaintiff has met the adequacy requirement of Fed.R.Civ.P. 23(a)(4). *See Baum* at 93,900.

## C. Rule 23(b)(3)

Defendants do not dispute that the requirements of Rule 23(b)(3) are met as to the federal claim. The common issues of law and fact noted above predominate. Because of the size of the class, the extent of common questions, and the tendency toward certifying actions in securities cases, I find that a class action is the superior mechanism for litigation of the federal securities claim. Therefore, the motion is granted as to Count I of the amended complaint.

## D. Class Period

There remains the problem of the class period. Defendants argue that plaintiff is in conflict with unnamed representatives of the class who purchased their Zayre stock either before June 9, 1986 or after July 7, 1986. "Such differences in purchase timing have overwhelmingly been found *not* to raise a conflict among class members." *Abelson*, slip op. at 10 (emphasis in original). *But see Robinson v. Penn Central Co.*, 58 F.R.D. 436, 443 (S.D.N.Y.1973).

■ June 9 is the date of the last alleged misrepresentation by Zayre. Defendants argue that this is the only statement upon which plaintiff can show actual reliance, and that he therefore would tend to minimize the importance of other, earlier statements and to maximize the significance of the June 4 statement. This contention does not demonstrate a conflict sufficient to hold that plaintiff cannot adequately represent the earlier purchasers, nor does it show that plaintiff's claim is atypical of those who purchased earlier. *Dura–Bilt*, 89 F.R.D. at 99–100. A class period spanning the release of different documents is appropriate where the documents repeated the same misrepresentation or constituted a common course of conduct. *See Green*, 406 F.2d at 299; *Elscint*, slip op. at 18; *In re Consumers Power Co. Securities Litigation*, 105 F.R.D. 583, 610 (E.D.Mich.1985). "That the common plan extended over a period of months or years and was executed by the release of different documents at different times does not make class action treatment improper." *Biben* at 92,831 (finding class period of seventeen months proper, and distinguishing it from one spanning four years). Here, the complaint alleges misrepresentations concerning Zayre's growth in earnings and its planned expansion made on four separate dates within a period of about three months. Thus, this case is distinguishable from one where the misstatements appeared in documents issued

over a decade, and there was no showing that the documents contained the same series of misrepresentations. *See Feldman v. Lifton,* 64 F.R.D. 539 (S.D.N.Y.1974). The alleged misrepresentations are sufficiently related in time and in content to be construed as a common course of conduct for purposes of class certification. The difference in purchase dates does not present an inherent conflict, especially given the cumulative effect that the misrepresentations could have. "In proving their own claims, later purchasers will necessarily prove the case of earlier purchasers, thereby fairly and adequately representing all purchasers regardless of when their purchase was made." *Dura–Bilt,* 89 F.R.D. at 100.

Defendants also argue that plaintiff cannot represent those who purchased Zayre stock after he did because he has no incentive to investigate any events or obligations arising after that date. This argument also fails for the reasons set forth above. *See Kirby,* 116 F.R.D. at 311–12 (and cases cited therein). *But see Fruchthandler v. Blakely,* 73 F.R.D. 318, 321 (S.D.N.Y.1976) (holding that plaintiff in nondisclosure case cannot represent subsequent purchasers). Plaintiff's proof of his own claim will necessarily involve proof of claims by subsequent purchasers. Plaintiff has an incentive to prove later events, having alleged a common course of conduct, and his lawyer has an incentive to prove claims on behalf of subsequent purchasers. *Dura–Bilt,* 89 F.R.D. at 100. *Cf. Simon v. Westinghouse Electric Corp.,* 73 F.R.D. 480, 485 (E.D.Pa. 1977) (finding lack of incentive where complaint alleged nondisclosure and misrepresentations arising at various times over four-year period and concerning various aspects of defendant's business). Finally, plaintiff satisfies the typicality requirement "by showing that the same allegedly unlawful conduct affected the named plaintiffs and the class members notwithstanding the existence of some potential conflict of interest due to differing purchase dates." *Dura–Bilt,* 89 F.R.D. at 99. *See also Blackie,* 524 F.2d at 902 (repetition of misrepresentations on different dates does not preclude finding that common questions predominate).

To the extent that conflicts may later develop, absent class members may be protected by the opt-out provision of Rule 23(b)(3) or by the creation of sub-classes. *Blackie,* 524 F.2d at 909–11.

## II. *Pendent Claims*

Defendants finally contend that even if the federal securities claim can be certified as a class action, the pendent claims of fraud and negligent misrepresentation cannot. They argue that individualized questions of reliance and damages make plaintiff's claim atypical and render class treatment inappropriate. Furthermore, they contend that the possibility that the law of different states will apply to the claims of different members of the nationwide class will make class action treatment of the state law claims unmanageable.

Courts have split on the issues presented by certification of pendent securities claims. *See Gruber v. Price Waterhouse,* 117 F.R.D. 75, 81 (E.D.Pa.1987) (noting split regarding question whether individual issues predominate as to common law claims). The recent trend is toward certification, with courts taking various approaches. Some engage in a choice-of-law analysis and conclude that the forum state's law does, or is likely to, apply. *Id.; In re ORFA Securities Litigation,* 654 F.Supp. 1449 (D.N.J.1987); *In re Pizza Time Theatre Securities Litigation,* 112 F.R.D. 15 (N.D.Cal.1986). Others place upon the defendant the burden of demonstrating that the law of different states would apply, and that the variations in state law are significant. *Margaret Hall Foundation* at 96,844. Other courts have certified the pendent claims after accepting the law of the forum state as the applicable law for purposes of certification, but allowing for reconsideration "[i]f it turns out that the laws of multiple states necessarily will be applied." *Biben* at 92,832. Finally, some courts refuse to certify common law claims. *Consumers Power Co.,* 105 F.R.D. at 609 (finding that individual questions of reliance predominate and that substantive law may vary among individual claims); *Zandman,* 102 F.R.D. at 930 (finding pre-

dominance of individual questions defeats certification because law of many states would apply and could differ significantly).

■ Here, no party has undertaken a choice of law analysis to determine whether the law of one state, or of many states, will apply to the pendent claims.[6] Nor has any party made a specific showing regarding the differences or similarities among the states on the law of fraud and negligent misrepresentation.

Plaintiffs bear the burden of showing that the requirements of Rule 23 have been met. *Backman,* slip op. at 1–2. They have not as yet demonstrated that the law of different states either will not apply or will not vary significantly. Therefore, I cannot at this time find that a class action is a superior method of litigating the pendent claims, as required by Fed.R.Civ.P. 23(b)(3), and therefore deny the motion for certification of the claims without prejudice to a renewed motion upon a showing regarding the choice of law issues. *Cf. Feldman,* 64 F.R.D. at 539 (certification motion denied without prejudice pending detailed proof on issue of commonality).

For the reasons stated above, plaintiff's motion and amended motion for certification is granted as to Count I and denied without prejudice as to Counts II and III of the amended complaint.