TRIST et al.

v.

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF CHESTER et al.**

Civ. A. No. 72–1599.

United States District Court,
E. D. Pennsylvania.

July 24, 1980.

See also, D.C., 89 F.R.D. 1, D.C., 89 F.R.D. 4.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Counsel for plaintiffs have petitioned for an award of attorney fees in the lodestar amount of $521,321.25 plus expenses of $77,240 incurred in the prosecution of these consolidated federal and state actions. After notice to all class members a hearing was held before me on April 7, 1980 to consider objections to the fee petition. No objections were raised at the hearing or at any other time, so that the fee petition now stands unopposed.

Like the Court of Appeals in *Prandini v. National Tea Co.*, 557 F.2d 1015, 1021 (3d Cir. 1977), I am placed in the unfortunate position of considering a fee petition *ex parte* and am thus deprived of the benefit of adversarial presentations. Given the antagonistic interests of counsel and their clients, an uncontested petition calls for heightened scrutiny by the trial judge. *Cf. Dunn v. H. K. Porter Co.*, 602 F.2d 1105, 1109 (3d Cir. 1979). Having carefully examined the petition in keeping with this responsibility, it must be said that there are limits to the investigative powers of the court under these circumstances. The court is presented with a cold record of hours and tasks performed, albeit in this case a detailed and thoroughly documented one, and is asked to inquire into the facts. Beyond questioning counsel at the hearing and examining the record for inconsistencies there

is little the court can do to insure the veracity of counsel's representations, leaving only the question of which claimed services are legally compensable. Barring obvious impropriety, the court still must rely largely on the good faith of class counsel, without the customary assurance of adversity.

Fortunately in this case class counsel have demonstrated over the course of this lengthy litigation an. uncommon dedication to the interests of their clients. Although this observation does not reduce the level of scrutiny with which their petition is regarded, it does provide some assurance that the facts which cannot be verified are accurately represented. As only one example, in several instances counsel have not asked compensation for hours invested early on in the litigation because of their attenuated relation to the ultimate recovery. Similar restraint is apparent in the hours claimed for services rendered throughout the litigation.[1]

The conduct of this litigation has spanned eight years and some 665 docket entries in the federal action alone. Six and one-half of those years I have presided over the intense pretrial skirmishing and have observed the performance of class counsel on numerous contested motions, including a motion to dismiss, two defense motions for summary judgment, and numerous discovery matters.[2] A detailed chronology of the history of the litigation appears in the fee petition filed with the Clerk. The history is also chronicled in my three reported opinions. *See Trist v. First Federal Savings & Loan Association of Chester*, 466 F.Supp. 578 (E.D.Pa.1979) (summary judgment); *Chevalier v. Baird Savings Association*, 72 F.R.D. 140 (E.D.Pa.1976) (class certification); *Chevalier v. Baird Savings Association*, 371 F.Supp. 1282 (E.D.Pa.1974) (motion to dismiss).

---

1. Further indication of the bona fides of class counsel is their rejection of an early settlement offer that would have paid counsel fees with no monetary recovery for the class. *Cf., Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 484 (E.D. Pa.1975).

2. The case was originally assigned to Judge Masterson of this court and was reassigned to me on November 30, 1973.

The total number of hours claimed for services rendered through February 29, 1980 is 7,177.27 of which 6,606.32 hours were for the federal action and 570.95 were for the state actions. Multiplied by the claimed historical billing rates for counsel and other legal staff, the requested fee for services rendered totals $511,321.25, $46,-357.00 of which applies to the state actions. In addition to these amounts, counsel estimate fees of $10,000 for services rendered after February 29 and request reimbursement for expenses advanced totalling $77,-240.[3]

The fee petition must be evaluated by the now familiar standards of *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*) and *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976) (*Lindy II*). As in the *Lindy* litigation, the fee request here is based not on statute but on the equitable fund doctrine, which permits class counsel to recover a fee from a fund recovered for the benefit of the class. Since services performed in connection with the fee application benefit counsel rather than the class, they are not chargeable against the fund.

■ The analytical framework of the *Lindy* line of cases[4] requires that the trial court first compute a lodestar amount based upon the normal hourly rate for the time expended. This amount can then be adjusted for the contingent nature of the suit and the quality of work performed by counsel as reflected in work submitted to the court, the difficulty of the issues and the result achieved. The adjusted figure must then be allocated among the various segments of the benefitted class.

### A. Compensation Based on Hours Expended

Counsel have submitted affidavits attesting to a detailed record of the number of hours spent by each lawyer and legal staff person broken down by year and by type of activity, *i.e.*, pleadings, pre-trial activities, class certification, summary judgment motion, settlement negotiations and class action activities. A separate analysis was submitted for state court activity. The joint petitions and accompanying affidavits are matters of record in this case, and I see no value in reproducing them in detail here.

■ After an independent evaluation of the hours claimed I find that they are accurate and reasonable and presented with commendable detail. The hours foregone because of their attenuated relation to the settlement add up to 365 hours during the years 1972–74, compensable at the claimed historical rates in the amount of $22,190. These hours were devoted primarily to opposing defendants' largely successful initial motion to dismiss. For the hours that are claimed, the greatest proportion is for "pretrial activities." While the number of hours is large, I find that they are justified by the enormous effort undertaken by class counsel to amass the evidence for trial. Some measure of the magnitude of the preparation involved is that class counsel took no less than forty-four depositions and defended another thirty-four taken by defense counsel. At trial plaintiffs proposed to call over 150 witnesses, defendants over 250. No small part of the mammoth pretrial effort can be attributed to the aggressive and skillful defense directed by lead counsel for defendants.

■ A source of concern is the potential overlap between the state and federal actions. Class members with dual membership should not have to pay twice for the same services merely because they wear two hats. I find, however, that no double payment is requested here. A survey of the filings in the state court submitted as an

---

3. $5,964 of this amount was expended since the filing of the petition, principally for administration of notice of the proposed settlement. Counsel have separately moved for reimbursement of this amount with a supporting affidavit.

4. *See also Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir. 1975); *Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3d Cir. 1974).

appendix to the joint petition reveals that the legal issues there differed sharply from those in the federal action, depending primarily on state contract law and issues of federal preemption. What factual overlap there was appears to have been used to the benefit of the class in view of the limited amount of discovery taken in the state action, and I note that two depositions were taken simultaneously in both actions.

■ Another matter deserving brief mention is the request for 100 hours of "future time" expected to be spent in administration of the settlement after submission of the fee petition. The grant of such a request was approved in *Lindy II*, 540 F.2d at 121. Although 100 hours is undeniably an arbitrary figure, I do not find it unreasonable. Indeed, if the past is prologue, it is a conservative estimate. Petitioners are well aware that no time spent in connection with this petition is compensable.

■ Valuing the time worked is made somewhat difficult by the passage of eight years. During that time not only have rates of compensation increased for lawyers generally, but the individual petitioners have progressed up through the ranks. In this regard counsel could have been more helpful in designating which claimed increases in historical rate were due to inflation and which were due to career progress. Nevertheless, having examined the claimed rates in detail, I find that although confusing at first, once sorted out they are reasonable and justified.

The confusion appears to result less from inflation than from excessive zeal for precision in billing rates. For example, each of the six members of the firm of Diamond, Polsky & Bauer seeking compensation for work performed in 1977 billed at a different rate that year, ranging from $50 to $90 per hour. Except for one negligible instance,[5] however, each of these gradations appears

reasonable upon reference to the curricula vitae and I will not penalize counsel for departing from a conventional binary billing scheme.

■ Compensation is sought for nine members of the firm of Diamond, Polsky & Bauer, including principal attorneys for plaintiffs, David Ackerman and Samuel Diamond. The submitted rates for time spent in non–contingent cases yields the following schedule: $50 per hour for junior associates, $65 per hour for senior associates, $75 per hour for junior partners, and $90 per hour for senior partners. This schedule holds for the entire period with slight deviations, *e.g.,* the rate for senior partners was raised to $100 per hour in 1979–80. Upon consideration of the biographical data submitted in the petition, I find these figures fair ones to use in computing the lodestar. I also approve the hourly rate of $25 per hour for paralegal time and $10 for the small amount of services performed by law students. *See Dorfman v. First Boston Corp.,* 70. F.R.D. 366, 373–74 (E.D.Pa.1976).

■ Three members of the firm of Shuster & Beckman seek compensation as co–counsel for plaintiffs. Morris Shuster's normal billing rate for non–contingent matters was $100 per hour from 1974–78 and $125 per hour thereafter. While these rates appear generous, they are not overly so in view of Mr. Shuster's extensive experience in the trial of complex litigation. Such experience was necessary to prepare plaintiff's case. Similarly I find reasonable both the rate of $60 per hour for associate Myra Josephson and the estimate of $40 for associate Cheryl Gelber, who did not have an established rate for non–contingent matters.

■ Herbert Newberg also seeks compensation as co–counsel for plaintiffs. His historical rate is stated as $135 per hour for 1976–78 and $150 per hour thereafter. Mr.

---

**5.** Daniel Farmer's time was billed in 1977 at $80 per hour, a rate which appears nowhere else in the petition. Not only was Farmer's rate unique, but it dipped to $75 per hour the next year, another anomaly indicating that the 1977 rate is incorrectly stated. Nevertheless, Farmer billed only .1 hour that year so that even assuming the proper figure is $75, the difference is only $.50.

Newberg is a judicially recognized expert in the field of class actions. *Vecchione v. Wohlgemuth*, 481 F.Supp. 776, 792 (E.D.Pa. 1979). He is the principal author of the six volume treatise "Newberg on Class Actions" and has published several other books and articles on the subject. He has served as trial counsel or co–counsel in dozens of class actions and has lectured extensively on class action practice and public interest law. His contemporaneously maintained record of time spent in this litigation shows that with the exception of fourteen hours devoted to settlement and one-half hour devoted to discovery, all of his time related to class action aspects of the litigation. I find the stated rates for Mr. Newberg's services to be fair and reasonable. Accord, *Bullock v. Kircher*, Fed.Sec.L.Rep. ¶ 96,963 (D.N.J.1979).

Based on the foregoing I will approve the petitioners' proposed total lodestar amount of $521,321.25. Although it is perhaps unusual to approve the proposed lodestar calculation in toto, the petition in this case is detailed, accurate and comprehensive. Just as importantly, the petition reflects an understanding of the applicable law.

### B. Adjustment of the Lodestar

Apparently finding quantitative self–aggrandizement unseemly, petitioners do not request a specific increase in the lodestar amount, but ask that I set a figure based on my familiarity with the case and with counsel. Despite this noble gesture, I apprehend that in fact petitioners seek a one–third upward adjustment in the lodestar. The petition unabashedly seeks an increase; it fails only to set a figure. But petitioners limit themselves in the notice of the proposed settlement to a fee of twenty–five percent of the total benefits received by the class, and in the petition "waive" any additional amount, thereby placing a ceiling on

the fee of $707,102.43.[6] This figure represents a maximum multiplier of 1.36, or roughly a one–third increase in the lodestar.

■ Petitioners' humility aside, an upward adjustment to the ceiling is clearly warranted by the contingent nature of the success of this litigation alone, making unnecessary the difficult task of evaluating the performance of counsel against their normal compensation.[7] This case is undeniably novel and in many aspects unique. It is both factually and legally complex. Class counsel did not have the benefit of an earlier government investigation or even similar private civil actions to draw upon for information or precedent. Petitioners accepted the case wholly on a contingent fee basis; they had no recourse to any clients for a fee if this action had been unsuccessful and success was by no means certain at the outset. Plaintiffs faced the difficult burden of proving the alleged antitrust conspiracy without any direct evidence of its existence. The web of circumstantial evidence was fragile indeed. Furthermore, petitioners were virtually assured that the defense of the action would be skilled and financially well-supported. Although the named plaintiffs had agreed to reimburse counsel for their out–of-pocket expenses, counsel faced the possibility of being financially overwhelmed by the outlay in expenses and unpaid attorney time before a favorable result could be achieved. Thus, petitioners put at risk not only their time and money but the viability of their practice. Under these circumstances I find that the contingency factor amply justifies a multiplier of 1.36, bringing the adjusted figure to the maximum permitted under the proposed settlement. *Cf. Dorfman v. First Boston Corp., supra; see Lindy II*, 540 F.2d at 117.

■ Because I am prepared to award a fee in the maximum amount allowed by the settlement agreement, it is necessary to

**6.** This figure is 25% of $2,828,409.72, counsel's estimate of the total value of the settlement exclusive of interest corrected to May 5, 1980 to reflect an accounting and audit.

**7.** By this I do not imply any disparagement of class counsel. To the contrary petitioners have

conducted this gargantuan litigation with perspicacity. A measure of petitioners' worthy achievement is that this case has been the subject of seminars in complex litigation at the University of Pennsylvania Law School for several years.

consider briefly the valuation of the settlement insofar as it relates to the fee. At the hearing on the fee petition I questioned petitioners on the valuation of the right of antitrust class members with outstanding mortgage loans to delay payment for a month. This right, valued at $1,615,569 by plaintiffs' expert, Dr. Murray Gerstenhaber, Professor of Mathematics at the University of Pennsylvania, accounts for more than half of the total settlement benefits. A non-monetary benefit may support a fee award, but "the district court must bring an informed economic judgment to bear in assessing its value." *Merola v. Atlantic Richfield Company*, 515 F.2d 165, 172 (3d Cir. 1975). Accepting Dr. Gerstenhaber's calculations, my concern was whether the proposed one-time notice would assure that class members would continue to avail themselves of the right to delay. Mr. Shuster responded at the hearing that the notice given was unequivocal and, moreover, that whether or not these benefits are actually enjoyed by class members is of no consequence in determining their availability to satisfy a fee award, citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980).

In *Boeing* the Court held that a common fund fee award could be assessed out of an unclaimed portion of the fund. It is not at all clear that this holding precludes consideration of the likelihood that class members will actually take advantage of a recovery in *valuing* a non-monetary benefit. Notwithstanding the language in *Boeing* that "members of the class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery," *id.*, at 684, it is not difficult to imagine a case where the abstract right is so difficult of enjoyment that its value is diminished. On reflection, however, I find that the barriers to enjoyment in this case are not so high as to require reduction of the value of the right. The single notice is sufficient to inform class members of their right if they wish to assert it. Thereafter, the right to delay is theirs to disregard or use as they see fit. Accordingly, I do not find that the requested upward adjustment would violate the settlement agreement.

### C. Allocation and Expenses

Under *Lindy I* "absent extraordinary circumstances" class members should pay a share of the fee award in proportion to the benefit they receive from the recovery. I find nothing extraordinary in the distribution of benefits under the settlement to prevent assignment of aliquot shares of the fee here. For this purpose I approve of the following distribution as provided in the settlement agreement: antitrust plaintiffs with open mortgages 86%, antitrust plaintiffs with paid-off mortgages 8%, state law plaintiffs 5%, and truth-in-lending plaintiffs 1%.

Total expenses advanced by petitioners amount to $77,240, $5,964 of which was paid after the submission of the original joint petition. The requests for expenses are itemized and supported by affidavits. Almost half of the total requested amount relates to notices to the class. I note that the supplemental request includes a reasonable fee paid to an independent certified public accountant to audit defendants' computation of benefits due under the settlement. Class counsel are entitled to reimbursement of their costs and expenses in the amount requested, to be allocated according to the same formula as the fee.