**Chad COE and Anthony Imburgia, Plaintiffs,**

v.

**NATIONAL SAFETY ASSOCIATES, INC., Jay Martin, Todd R. Isaacson, Chris Christofferson and Marjorie A. Scontrino, d/b/a NSA USA Group & John Doe 1 through 500, incl., Defendants.**

**No. 90 C 3209.**

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1991.

Herbert Beigel, Ronald A. Schy, Norman Rifkink, Beigel & Sandler, Ltd., Chicago, Ill., for plaintiffs.

Donald A. Mackay, G. Gale Roberson, Jr., McBride Baker & Coles, Chicago, Ill., for Nat. Safety Associates, Inc. and Jay Martin.

Merle L. Royce, Marshall J. Burt, Mark Banks–Golub, Law Offices of Merle L. Royce, Chicago, Ill., for Chris Christofferson and Marjorie A. Scontrino.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The plaintiffs allege that they were the victims of defendants' "Ponzi" scheme, and that they are not alone in that position. They have filed a six-count complaint against the defendants, and moved this court to certify a class including everyone who invested in the defendants' enterprise. The defendants oppose the motion for class certification, and furthermore have moved to dismiss the complaint for lack of standing. Because the plaintiffs have adequately alleged the existence of a plaintiff class, and because they clearly have standing to pursue their claims against the defendants, this court denies both motions.

### Background

National Safety Associates (NSA) manufactures and sells a line of water filtration products. NSA markets these products through an extensive network of distributors, who are "recruited" to the system by other, existing distributors. The distributors receive commissions on the sales of their "downlines"—the people they recruited; and pay commissions to their "uplines" —the people who recruited them.

The plaintiffs allege that the reason they became NSA distributors is not because they believed they would find their fortunes in the water filtration business, but rather because their recruiters persuaded

them they could make "easy money" by buying a particular level distributorship and then selling "sub-distributorships" to other purchasers. These are the NSA "stairsteps of opportunity". Through these machinations, no product need actually be sold for a particular distributor to make money. None of these "opportunities" came without a cost, and the named plaintiffs have alleged that each step 'upline' cost between five and twenty-five thousand dollars.

This, the plaintiffs claim, is a "Ponzi" or pyramid scheme—that is, the people who make their purchases early are able to make money by selling "opportunities" to others, but as those others buy in, and sell to still others, the market becomes saturated and the latest purchasers are unable to find buyers. They are then unable to make the required payments to those "upline" from them, and the "pyramid" collapses on itself. The plaintiffs further allege that the sale of each "stairstep of opportunity" was the sale of a security—making the defendants liable for violations of the 1933 and 1934 Securities Acts.

The scheme is more complicated here because, according to the plaintiffs' allegations, as well as the deposition excerpts submitted in connection with the motion, there was not a single pyramid scheme (if there was a scheme at all—the court is not deciding that question here), but a large number (upwards of five hundred) of pyramids. NSA's "national marketing managers" were at the top of NSA's "stairsteps of opportunity". They were the top 'upline' person for each group of distributors—according to plaintiffs, they were each a "controlling person" at the top of their own pyramid. NSA itself stated in one of its promotional brochures that "NSA's National Marketing Directors represent the company's highest echelon of sales management. These people meet regularly with NSA's top executives to assist in the development of present and future marketing strategy." NSA Profit and Incentive (attached as exhibit to Affidavit of Richard Waak).

The question whether a pyramid or even a multiple pyramid scheme in fact existed is hotly disputed. NSA argues that its sales of approximately $295 million worth of its water filtration product last year mitigates against plaintiffs' claim. The plaintiffs counter that it was easy for NSA to stay in business, because its organization of a number of smaller pyramids guaranteed it a continual income—as older pyramids fell apart, new ones were created. Furthermore, plaintiffs argue, it was the *distributors* rather than consumers who purchased the product from NSA. It is plaintiffs' argument that NSA's sales were high because it created a substantial market for "stairsteps of opportunity" rather than for water filters.

NSA's management of the pyramids could only help its sales, but it would never suffer the fallout from a particular pyramid, according to plaintiffs' allegations. If NSA remained unscathed, the plaintiffs did not, and hence, this suit. The question before the court at this juncture is whether the plaintiffs should be permitted to maintain the suit as a class action.

### Discussion

Rule 23 of the Federal Rules of Civil Procedure provides the guidelines which this court must evaluate in deciding whether to certify a class. Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Certification is inappropriate unless the court finds that the plaintiffs have met each of these requirements. The court also notes that the Seventh Circuit has repeatedly interpreted Rule 23's admonishment that the decision whether to certify a class be made "as soon as practicable after

the commencement of the action" to mean that the district courts should decide whether to certify the class before deciding any dispositive motions. See e.g. *Bieneman v. City of Chicago*, 838 F.2d 962, 963 (7th Cir.1988).

■ Nobody claims that the proposed class is not sufficiently numerous—as of September last year NSA listed nearly three hundred thousand people at the bottom rung of its "stairsteps" (i.e. the lowest distributor level), though the parties agree that the proposed class would consist of around a hundred thousand people. The disputes here concern the remaining three requirements of Rule 23(a), and this court will consider them in turn.

### 1. Common Questions

The first issue is whether the plaintiffs have demonstrated that the significant questions of law or fact which their own claims raise are common to those which would be raised by the class. See *Johnson v. Baldinger*, No. 89 C 2138, slip. op. at 5, 1990 WL 60713 (N.D.Ill. April 19, 1990), found at 1990 U.S.Dist.Lexis 4596. The question must be answered affirmatively in this case. Plaintiffs have alleged that the defendants, by creating the distributor networks they did, violated various securities laws, RICO and Illinois law. The defendants argue that the questions presented are not common, since part of plaintiffs' case rests upon oral representations made by various NSA distributors. The question remains, however, whether those representations were made at NSA's direction, or according to an NSA 'script'. Because it is the entire *system* which is in issue here, rather than the treatment of a particular plaintiff, the court finds that the plaintiffs have demonstrated that the *significant* questions they have presented would be common to the class.

### 2. Typical Claims

The next question, related to the first, is whether plaintiffs' claims are "typical" of those of the proposed class. As this court noted in *Johnson*, supra, "[c]laims are typical if the evidence which proves the named plaintiffs' claims also proves the claims of the proposed class." *Id.* at 6, citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 158, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982). The defendants' argument on this point concentrates on the issue the court noted above—namely, that the plaintiffs' complaints center on individual acts or omissions which are unique to each plaintiff, and would be unique to each member of the proposed class. Indeed, argue the defendants, plaintiffs have knowledge only of the groups to which they belonged, while they seek recovery based upon the actions of *all* the NSA distributor groups. Again, this court construes plaintiffs' complaint as one against the *system* of groups, rather than about actions taken within a particular group—and the facts upon which the plaintiffs will rely to establish the illegality of the *system* are the same facts upon which the members of the proposed class would rely.

The defendants second argument has more substance. The defendants claim that because the plaintiffs were recruit*ers* as well as recruits, they are subject to an "in pari delicto" defense, making their claims atypical of the rest of the proposed class. That is, since the named plaintiffs participated in the allegedly illegal scheme by recruiting innocents into it, they cannot represent a class of those innocents. If this court were to certify a class of "all investors" in the NSA distributorship program and allow the class to bring its claim against anyone who recruited a class member, the problems of aligning plaintiffs and defendants would be insurmountable. That is not necessary here, however, since it is quite possible for the court to certify a class of all investors, *except* those who have reached the top, National Marketing Director, level which, as the court noted above, carried significantly different advantages and responsibilities than the lower levels. Thus, the plaintiffs and defendants are easily separated. The court accordingly finds that the plaintiffs' claims are "typical" of those of the proposed class.

### 3. Adequate Representation

The question whether the plaintiffs will adequately represent the class usually focuses on whether plaintiffs' attorneys possess adequate skills for the job and whether plaintiffs have brought a collusive suit, based upon interests antagonistic to the rest of the proposed class. See 1 Newberg on Class Actions § 3.22, pp. 198–99 (1973). The defendants have premised their arguments on two different points, however, neither of which this court finds convincing.

■ First, the defendants claim that the plaintiffs cannot possibly adequately represent the class, since they were not able to discuss the specifics of the complaint during their depositions. That plaintiffs were not fluent in the legal basis of their claim is neither surprising nor discouraging. Plaintiffs, believing that they had been wronged, hired an attorney to discover whether they had a legal basis for recovery and having found it, to pursue it against the defendants. That they have not learned the specifics of the law (and some rather complicated laws are in issue here) does not indicate at all that they cannot adequately represent their fellow class members.

■ The defendants' second argument is that the plaintiffs have no standing to bring this action—thus they cannot adequately represent the proposed class. A plaintiff has "standing" to bring an action if he or she is able to allege that the defendant[s] in particular caused a specific harm to the plaintiff in particular. See generally *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Here, the plaintiffs argue that the defendants' creation and maintenance of the system of independent groups of distributors caused them a specific harm—loss of their investments. They don't need to establish privity with each of the defendants (at least not to satisfy this inquiry)—their burden is satisfied if they are able to allege that each defendants' action contributed to the harm they suffered and, as discussed above, they have done so here.

### 4. Predominance and Superiority—Rule 23(b)(3)

As this court noted in its discussion of 'commonality' and 'typicality', class questions predominate over the individual ones, and because of that, as well as the size of the proposed class and the possibly small amounts of individual class members' losses, the class action is a superior method of adjudicating this action. Thus, the requirements of Rule 23(b)(3) have been met as well as those of Rule 23(a). Accordingly, the court grants the plaintiffs' motion for class certification, and certifies the class of all individuals, partnerships, corporations, and other entities who invested in NSA's "stairsteps of opportunity", excluding those individuals, partnerships, corporations and other entities who are or were at the top level of NSA's distributorship or sales program, National Marketing Manager, level, members of their families or the families of any other defendants, and also excluding any investors who made a profit.

### Conclusion

Plaintiffs' motion for class certification is granted. The court certifies the class of all individuals, partnerships, corporations, and other entities who invested in NSA's "stairsteps of opportunity", excluding those individuals, partnerships, corporations and other entities who are or were at the top level of NSA's distributorship or sales program, National Marketing Manager, level, members of their families or the families of any other defendants, and also excluding any investors who made a profit.