Schaffer v. Timberland Co.          CV-94-634-JD  03/19/96
                 UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Jerrold Schaffer, et al.

     v.                              Civil No. 94-634-JD

The Timberland Co., et al.


                            O R D E R


     The plaintiffs, Jerrold Schaffer and Gershon Kreuser, on

their own behalf and purportedly on behalf of a class of other

similarly situated investors, have brought this now-consolidated

securities action against the Timberland Company and two of its

directors and officers, Sidney Swartz and Jeffrey Swartz, for

losses related to a precipitous drop in the market value of

Timberland stock in December, 1994.[1]  Before the court is the

plaintiffs' motion for class certification (document no. 19).


                          Background[2]

     The named plaintiffs and the proposed members of the

plaintiff class (collectively the "plaintiffs") purchased various

_____

     [1]The court consolidated two separate lawsuits into the
instant action.  See Schaffer v. The Timberland Co., No. 94-634-
JD, Case Mgmt. Order (D.N.H. Aug. 24, 1995).

     [2]The nature of this action is described in greater detail in
the court's order on the defendant's motion to dismiss.  Schaffer
v. Timberland, No. 94-634-JD, slip op. (D.N.H. March 18, 1996).

quantities of publicly traded Timberland stock between May 12, 1994, and December 9, 1994 (the "class period"). The proposed class does not include the defendants, "members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party." Amended Complaint at ¶ 16. Timberland is a Delaware corporation which maintains a principal place of business and executive offices in Hampton, New Hampshire. Timberland became a public company in 1987 and during the class period its common stock was actively traded on the New York Stock Exchange. Id. at ¶ 17. As of March 1, 1994, there were more than 7.6 million shares of Class A Timberland common stock outstanding with approximately 660 holders of record of such stock. Id.[3] Defendant Sidney Swartz serves as Timberland's chairman of the board and as president and chief executive

_____

[3]According to the plaintiffs, during the relevant period Timberland also had outstanding more than 3 million shares of Class B common stock, all of it held by the individual defendants and affiliated trusts and other entities. See Amended Complaint at ¶ 11(f). The existence of the Class B stock is not relevant to the instant motion because the owners of this additional class of stock are specifically excluded from the proposed plaintiff class.

officer. His son, defendant Jeffrey Swartz, serves as a board member, executive vice president, and chief operating officer.

The plaintiffs have alleged that during the class period the defendants engaged in a variety of practices in violation of section 10(b) of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78(t), and rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC").

On the final day of the class period, December 9, 1994, Timberland released its anticipated 1994 fourth quarter and fiscal year financial results. At the time the defendants announced that Timberland would not reach anticipated sales levels and that its earnings per share would be lower than those from the prior year. As a result of this announcement, Timberland's stock dropped $4 3/8 to $22 5/8 per share. The trading volume of 523,200 was more than five times Timberland's three-month daily average volume of 94,800.

The named plaintiffs and members of the proposed class suffered as a result of the defendants' allegedly fraudulent and unlawful conduct. The named plaintiffs' claims "are typical of the claims of other members of the Class because [the named] plaintiffs' and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to the defendants." Amended

Complaint at ¶ 19. Moreover, the "[named] Plaintiffs do not have any interest antagonistic to, or in conflict with, the Class." Id.

The court will incorporate, infra, additional factual allegations, as necessary for its analysis of the instant motion.

## Discussion

"Actions based upon securities fraud are among the most common class actions," 3B James W. Moore, Moore's Federal Practice ¶ 23.02 (2d ed. 1995), and courts recognize that the "ultimate effectiveness of federal securities remedies may depend on the applicability of the class action device," Holton v. L.F. Rothschild, Unterberg, Towbin, 118 F.R.D. 280, 283 (D. Mass. 1987). The court's decision to certify a class rests on a "rigorous analysis of the particular facts of the case," In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1530 (D. Mass. 1991) (quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)), but remains "an initial determination that must be made without inquiry into the merits of the plaintiffs' claims," id. at 1529 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177 (1974)). The Federal Rules explicitly require the court to rule on the class certification issues "as soon as practicable" and the court may alter or amend such a ruling at any time before the case is resolved on the merits. 2 Herbert B.

4

Newberg, Newberg on Class Actions § 7.12 (3d ed. 1992)

(discussing timing and procedure of initial class

determination).[4]

Class certification is governed by Rule 23, which requires a

finding that

> 1. the class is so numerous that joinder of all members
> would be impracticable ("numerosity");
>
> 2. there are questions of law and fact common to the
> class ("commonality");
>
> 3. the claims or defenses of the representative parties
> are typical of the claims or defenses of the class
> ("typicality"); and
>
> 4. the representative parties will fairly and
> adequately protect the interests of the class
> ("adequacy").

Fed. R. Civ. P. 23(a); see Modell v. Eliot Sav. Bk, 139 F.R.D.

17, 19-20 (D. Mass. 1991); In re One Bancorp Sec. Litig., 136

F.R.D. 526, 528-29 (D. Me. 1991). Class actions filed under the

securities laws also must satisfy Rule 23(b)(3), which requires

that "common questions of law and fact predominate over any

questions affecting individual class members, and that a class

---

[4]At the defendants' request the court did not entertain the pending motion until after ruling on the defendants' motion to dismiss. Although recent caselaw and scholarship favor resolution of the class certification issue prior to the consideration of a dispositive motion, the court's failure to follow the preferred approach is harmless because its denial of the motion to dismiss favored the plaintiffs and, thus, "the interests of the absent class members have not been prejudiced." 2 Newberg at § 7.15.

5

action would be superior to other methods for adjudicating the controversy." Bank of Boston, 762 F. Supp. at 1530; accord Modell, 139 F.R.D. at 19-20. The plaintiffs bear the burden of proving the Rule 23 requirements for class certification. Bank of Boston, 762 F. Supp. at 1530 (citing Grace v. Perception Tech. Corp., 128 F.R.D. 165, 167 (D. Mass. 1989)).

The defendants' opposition to the class certification challenges on a variety of grounds the plaintiffs' satisfaction of the typicality and adequacy elements of Rule 23 and the court's inquiry will focus on these areas. Defendants' Memorandum in Opposition to Class Certification ("Defendants' Memorandum") at 37. The defendants also argue that, should the court grant the motion, the class period should begin no earlier than September 13, 1994.

I.   Numerosity and Commonality

The defendants have not challenged the plaintiffs' satisfaction of the numerosity and commonality requirements, Fed. R. Civ. P. 23(a)(1) and (a)(2). However, the court has undertaken its own analysis of these requirements to safeguard the due process rights of the unnamed class members.

The court finds that the existence of a large number of shareholders who collectively traded in the millions of

outstanding shares of Class A Timberland common stock "permits the inference that the [proposed] class is so large that joinder is impracticable." Priest v. Zayre Corp., 118 F.R.D. 552, 554 (D. Mass. 1988) (citing Abelson v. Strong, No. 85-0592-S, slip op. at 4 (D. Mass. July 30, 1987); Kirby v. Cullinet Software, 116 F.R.D. 303, 306 (D. Mass. 1987)).

The court also finds that the claims of the named plaintiffs and of the proposed class present numerous common questions of fact and law, many of which bear directly on necessary elements of a securities fraud action under section 10(b) and rule 10b-5. These questions include disputes over whether the defendants' public statements and other chargeable statements were false, misleading, or incomplete; whether any such misrepresentations or omissions were material; whether the defendants acted with scienter; and whether the allegedly fraudulent conduct artificially inflated the stock price. See id.; see also Schaffer, slip op. at 47-48 (D.N.H. March 18, 1996) (discussing elements of securities fraud claims and collecting authority).

Accordingly, the court finds that Rule 23(a)'s numerosity and commonality requirements are satisfied.

## II. Typicality

For purposes of Rule 23,

> [t]he claims of the class representatives are considered typical when the [named] plaintiff[s'] injuries arise from the same course of conduct as do the injuries that form the basis of the class claims, <u>Tolan v. Computervision Corp.</u>, 696 F. Supp. 771, 777 (D. Mass. 1988), and when the plaintiff[s'] claims are based on the same legal theory, <u>Dura-Bilt Corp. v. Chase Manhattan Corp.</u>, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).

<u>Modell</u>, 139 F.R.D. at 22; <u>accord</u> <u>One Bancorp</u>, 136 F.R.D. at 530 (citing <u>Rossini v. Ogilvy & Mather, Inc.</u>, 798 F.2d 590, 598 (2d Cir. 1986)); <u>Adair v. Sorenson</u>, 134 F.R.D. 13, 17 (D. Mass. 1991) ("The named plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same event, practice or course of conduct of the defendant as do the injuries which form the basis of the class claim.").

Applying this standard, the court finds that the named plaintiffs' claims are typical of those presented by the proposed class. First, the legal claims and theories are identical to the extent that all plaintiffs allege fraud on the market liability against the same three defendants under section 10(b) and rule 10b-5. Second, all plaintiffs allege a common, specifically identified array of false and misleading statements and omissions, <u>i.e.</u>, those related to earnings and inventory matters, which were disseminated to the market through the same channels

8

of communication, i.e., statements to and by analysts, public filings, etc. Third, the plaintiffs have asserted that the same set of nondisclosed adverse information, i.e., internal company documents and audits, evidence the fraudulent nature of the public statements. Finally, given the definition of the proposed class, all plaintiffs purchased Timberland stock at a fraudulently inflated price during the class period and, ultimately, suffered financial losses for the same reasons. See generally One Bancorp, 136 F.R.D. at 531 (named plaintiffs' claims "typical of the claims of the class because the complaint alleges that Defendants engaged in a scheme or common course of conduct designed to deceive the investing public") (citations omitted); Kirby, 116 F.R.D. at 312 ("where plaintiff claims a continuing course of conduct and points to specific and identified documents which are alleged to contain interrelated and cumulative misrepresentations, class certification is proper.") (internal quotation marks and citations omitted)).

The defendants do not appear to dispute these findings. Instead, their challenge under the typicality element rests on the theory that "the putative class representative[s are] subject to unique defenses which threaten to become the focus of the litigation." Defendants' Memorandum at 6 (quoting Hanon v. Data Products Corp., 976 F.2d 497, 508 (9th Cir. 1992)). The

9

defendants reason that, for purposes of a fraud on the market action, the named plaintiffs are atypical shareholders because neither will be able to establish "his own case of reliance -- either on Timberland's alleged misrepresentations or on the integrity of the market." Id. at 7-8. Relying on deposition testimony, the defendants further assert that Schaffer is an atypical professional plaintiff and that Kreuser engages in atypical, "bizzare" trading practices. Id. at 8-15. The plaintiffs respond that factual disputes concerning reliance are not class certification issues and, even if these were cognizable arguments, that Schaffer is not a professional plaintiff and that Kreuser's investment strategy is quite common. Plaintiffs' Memorandum in Further Support of Class Certification ("Plaintiffs' Reply Memorandum") at 7-10.

The defendants are correct that a plaintiff subject to "unique defenses that would divert attention from the common claims of a class . . . may be considered atypical of the class." Modell, 139 F.R.D. at 22 (citing Grace, 128 F.R.D. at 169)). However, for a variety of reasons related to the nature of the purportedly unique defenses, the argument cannot defeat class certification in this case.

First, under Basic v. Levinson, 485 U.S. 224 (1988), and its progeny, the plaintiffs are plainly entitled to a presumption of

10

reliance by virtue of their fraud on the market theory of liability. See Schaffer, slip op. at 17 (D.N.H. March 18, 1996) (describing presumption of reliance in context of motion to dismiss). Although the defendants may undertake to sever this presumption of reliance by operation of the truth of the market defense, the success of the defense hinges on a fact-intensive inquiry central to the merits of the plaintiffs' claims. Id., slip op. at 19. The Supreme Court squarely rejected factual inquiries at the class certification stage because there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Eisen, 417 U.S. at 177. Likewise, in a recent fraud on the market case, the District of Maine rejected essentially the same argument advanced by the Timberland defendants because "the court may not consider the merits of the case at the class certification stage." One Bancorp, 136 F.R.D. at 530); see Gorsey v. I.M. Simon & Co., Inc., 121 F.R.D. 135, 139 (D. Mass. 1988) ("it is inappropriate to raise non-reliance at the certification stage because entry into the intricacies of reliance goes to the merits of the case."). Accordingly, the court finds that any unique defense argument against class certification fails to the extent it

11

attacks the presumption of reliance accorded the plaintiffs under their fraud on the market theory.[5]

Second, the court finds that Schaffer's past involvement in securities litigation does not render his claims in this case atypical. Schaffer's six prior actions may raise questions about the motivation behind this most recent foray into federal court and the defendants are, of course, entitled to explore these questions where relevant to this lawsuit. However, for purposes of the instant motion his personal litigation history bears no relationship to the merits of his legal claim and, thus, cannot

_____

[5]The defendants also argue that class certification can be denied even without a fact-intensive inquiry on the merits because it is already evident that the "issue of reliance in this case clearly predominates." Defendants' Reply Memorandum at 1-3 (citing Hanon v. Dataproducts, Inc., 976 F.2d 497, 509 (9th Cir. 1992); Rosen v. The Timberland Co., No. C-89-277-L, slip op. at 8-9 (D.N.H. Feb. 26, 1990)). It is apparent that the defendants intend to aggressively challenge the plaintiffs' claims of reliance and that the truth on the market theory may evolve into a principal focus of this litigation. See Defendants' Memorandum in Support of Motion to Dismiss at 22 (in support of motion to dismiss, defendants argue at length that, given the facts of the case, the fraud on the market theory must fail because "the market had full knowledge of the information Defendants allegedly concealed from the market."). Although this theory may be the core of the defendants' case, such predominance cannot defeat the motion for class certification because the defense is not at all unique to the named plaintiffs. Rather, the defense is directed at the fraud on the market claims presented by all of the plaintiffs and, as such, there is no likelihood that the expected focus on this issue will "divert [the named plaintiffs'] attention from the common claims of [the] class." Modell, 139 F.R.D. at 22 (citation omitted).

render his claim atypical of those presented by the class. <u>See</u>, <u>e.g.</u>, <u>Rubenstein v. Collins</u>, 162 F.R.D. 534, 537 (S.D. Tex. 1995) (rejecting without elaboration that named plaintiff's participation in "several" prior class actions rendered him atypical); <u>Weiss v. Zayre Corp.</u>, No. 86-2919-Z, 1988 WL 20928 at * 1 (D. Mass. Feb. 29, 1988) ("litigiousness alone does not render a plaintiff inadequate"). The court will further address Schaffer's litigation history in the context of the defendants' challenge to his adequacy to serve as a class representative, <u>infra</u>.[6]

---

[6]The defendants' authority does not adequately support their suggestion that Schaffer's individual claim is intrinsically atypical because of his litigation history. <u>See</u> Defendants' Memorandum at 10-11 (citing <u>In re Gibson Greetings Sec. Litig.</u>, 159 F.R.D. 499, 501 (S.D. Ohio 1994); <u>In re ML-Lee Acquisition Fund II Sec. Litig.</u>, 149 F.R.D. 506, 508 (D. Del. 1993)). In <u>Gibson Greetings</u>, the court refused to certify a class where the proposed class representative had filed approximately 182 class actions in twelve years. 159 F.R.D. at 501. In <u>ML-Lee Acquisitions</u>, the court granted a motion to compel discovery of the named plaintiff's investment history where the court questioned whether the named plaintiff's sophistication was atypical of the class members and where there was a question of whether the named plaintiff purchased securities for the "sole purpose of bringing strike suits." 149 F.R.D. at 508. The instant action is factually dissimilar from either of these extreme cases. First, Schaffer's litigation career of six prior actions pales in comparison to the truly professional, 182-action plaintiff admonished in <u>Gibson</u>. Second, unlike the named plaintiff in <u>ML-Lee Acquisitions</u>, the defendants have provided no basis to suggest that Schaffer's investment in Timberland was motivated by a desire to launch a strike suit against the company or for any reason other than to realize a capital gain.

Third, the court rejects the defendants' contention that Kreuser is an atypical plaintiff because he engaged in "bizarre" trading practices. According to the defendants, Kreuser's strategy as a "day trader" who sought to realize a gain from fractional increases in stock price and who acted on subjective impulses, as opposed to a long-term investment strategy, "standing alone [is] enough to differentiate him from the typical class member." Defendants' Memorandum at 13.

The fact that a named plaintiff employs an investment strategy different from those of the class does not render him atypical because "[i]t is of no consequence that the putative plaintiffs devised different investment strategies as a consequence of their reliance [on the market]." Tolan v. Computervision Corp., 696 F. Supp. 771, 780 (D. Mass. 1988); see Kirby, 116 F.R.D. 303, 308 (D. Mass. 1987) (named plaintiff's "investment strategy is of little importance" to class certification decision). This is because named plaintiffs "need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members." Priest, 118 F.R.D. at 555 (citing In re Elscint Ltd. Sec. Litig., No. 85-2622-K, slip op. at 18 (D. Mass. June 22, 1987)). Likewise, the "fact that [the] plaintiff's investment decisions were influenced

14

by his own subjective preferences . . . does not render him atypical." Id.[7]

This case is analogous to Computervision, where the court rejected essentially the same argument that the named plaintiff's "unique strategy of turnaround buying" made him vulnerable to unique defenses and, thus, prevented him from serving as class representative. 696 F. Supp. at 779. The court reasoned that on a motion to certify the class, "[i]t is not the manner in which plaintiffs relied that is the issue, but whether they in fact relied on the integrity of the market." Id. Thus, the court concludes that the

> [d]efendant[s'] contention that [Kreuser] is inadequate
> and atypical because his investment strategy was
> affected by factors other than the misrepresentations

---

[7]The defendants also claim that Kreuser's deposition testimony reveals that he did not rely on market information when making investment decisions and that his lack of reliance, like Schaffer's, could become a dominant issue at trial. See Defendants' Reply Memorandum at 4-5, n.5 (inviting court to watch Kreuser's videotaped deposition "to resolve just what Plaintiff said and did."). "To the extent that [the] defendants' reliance argument depends on [the] plaintiff's deposition testimony that he had no specific memory of any of the documents identified in the complaint [or the testimony that he relied on subjective instinct], it extends beyond the scope of class certification and into the merits of this litigation." Priest, 118 F.R.D. at 554 (citing Kirby, 116 F.R.D. at 307). In any event, the utility of Rule 23 would be imperiled if the defendants could thwart class certification simply by first identifying a defense that is obviously specific to one individual, such as "Schaffer's lack of credibility," and, second, by unilaterally declaring that the defense "will undoubtedly be a central focus of this litigation." See Defendants' Reply Memorandum at 6.

15

and market prices reads the adequacy and typicality requirements too strictly and views investor behavior unrealistically.

Priest, 118 F.R.D. at 554-55.[8]

Accordingly, the court finds that both named plaintiffs have presented claims and are subjected to defenses that are typical of those presented by members of the proposed class.


III.  Adequacy

In the First Circuit,

[t]wo basic elements guide the Court's interpretation of the "adequacy of the representation" requirement. The Court must determine, first, whether any potential conflicts exist between the named plaintiffs and the prospective class members and, second, whether the named plaintiffs and their counsel will prosecute the case vigorously.

Bank of Boston, 762 F. Supp. at 1534 (citing Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985), cert. denied, 476

---

[8]The Priest court further noted that

[d]iffering types of reliance are present in almost every securities class action.  There will always be some individuals who read the financial statements directly, others who read secondary analyses . . ., and many who relied on the advice of stockbrokers or friends.  If defendants' argument were to prevail that factual difference of this nature were sufficient to defeat class action certification, there could never be a class action of securities purchasers.

118 F.R.D. at 554-55 (quoting In re Data Access Sys. Sec. Litig., 103 F.R.D. 130, 139 (D.N.J. 1984)).

16

U.S. 1172 (1986); <u>Backman v. Polaroid Corp.</u>, No. 79-1031-Mc, slip op. at 4 (D. Mass. July 16, 1982)); <u>accord</u> <u>One Bancorp</u>, 136 F.R.D. at 532. "Thus, in the routine plaintiff class action, where the defendant raises an objection to the adequacy of representation, he must argue that the representation will be unfair to the absentee class interests, and also by implication, that any resulting judgment favorable to him will not provide <u>res judicata</u> protection." 3B James W. Moore, <u>Moore's Federal Practice</u> ¶ 23.07 [1] (2d ed. 1995).

The defendants have not identified a conflict, real or potential, between the interests of the named plaintiffs and those of the members of the proposed class. The court, following its own review of the pleadings, finds that no such conflict exists.

The court also finds that the named plaintiffs and their counsel will prosecute this case vigorously. The vitality of this prosecution is immediately apparent from the brief litigation history. Two complaints were filed, consolidated, and superseded by a comprehensive amended complaint. The instant motion for class certification was filed promptly. Counsel for the plaintiffs propounded extensive discovery requests and, more recently, successfully defeated an aggressive and legally sophisticated motion to dismiss. This track record reflects the

17

high level of vigor and resourcefulness expected of class representatives and their attorneys.

The plaintiffs' deposition testimony also manifests their understanding and acceptance of the weighty responsibilities borne by class representatives. For example, Schaffer testified as follows:

> Q: What is a class action?
>
> A: A class action is a suit which there are too numerous amounts of transactions to make it economically viable for each party to bring a lawsuit, so this is suing that all the people who have a loss be treated on an equal basis.
>
> Q: What is your understanding of the responsibilities of a class representative?
>
> A: I have to engage legal counsel that's familiar with, experienced in these matters, make sure that everybody in the class would be notified of what transpires, hand in any documentation, make myself available for a deposition or to go to court.

Deposition of Jerrold Schaffer ("Schaffer Deposition"), 11/8/95, at 57. Kreuser, although less articulate than Schaffer, also understands the class action device and his responsibilities to members of the plaintiff class. See Deposition of Gershon Kreuser ("Kreuser Deposition"), 11/20/95, at 130-32; 136; 296. Moreover, both plaintiffs understand the basic theory of fraud on the market liability, e.g, Schaffer Deposition at 60-65; Kreuser Deposition at 134-35, 146, 161-63, the approximate procedural status of the case, e.g., Schaffer Deposition at 51-52; Kreuser

18

Deposition at 313-14, and both are in regular contact with their attorneys, e.g., Schaffer Deposition at 58; Kreuser Deposition at 24, 138, 142.

The defendants argue that Schaffer and Kreuser are inadequate class representatives because, inter alia, they are not sufficiently familiar with the allegations in the amended complaint, have ceded control of the litigation to their attorneys, and have not accepted financial responsibility for the prosecution of the case. See Defendants' Memorandum at 15-26. The arguments are without merit and are addressed briefly seriatim.

With respect to the attack on the extent and breadth of plaintiffs' knowledge, the court already has ruled that Schaffer and, perhaps to a somewhat lesser degree, Kreuser, possess a basic layman's understanding of the legal and factual issues underlying this lawsuit. A more sophisticated understanding is simply not a prerequisite to class certification because

> [t]he mere fact that [a named plaintiff is] not
> familiar with the specifics of the Complaint should not
> defeat his representative status. "That [the
> Plaintiffs] have not learned the specifics of the law
> (as some rather complicated laws are at issue here)
> does not indicate at all that they cannot adequately
> represent their fellow class members."

Modell, 139 F.R.D. at 23 (quoting Coes v. National Safety Assoc., Inc., 134 F.R.D. 235, 239 (N.D. Ill. 1991), vacated on

19

reconsideration, 137 F.R.D. 252 (N.D. Ill. 1991)); see Priest, 118 F.R.D. at 556 ("A representative need not have personal knowledge of all the relevant facts to be deemed adequate); Dura-Bilt Corp., 89 F.R.D. at 102-03 n.18 (detailed understanding unnecessary for class certification but acknowledging conflicts among courts over what degree of knowledge is required); 1 Newberg at § 3.34 (compiling authority and noting that most courts reject "any challenge to adequacy for class actions . . . based on ignorance of the facts or theories of liability.").[9]

The court also is not troubled by the plaintiffs' heavy reliance on counsel and, in view of Schaffer's and Kreuser's testimony concerning their roles and relationships with counsel, rejects the suggestion that they have abdicated their responsibilities to the class. This case presents sophisticated legal issues and, as such, it is not surprising that the parties

---

[9]The court notes the apparent incongruity between the defendants' argument that Schaffer cannot serve as a class representative because he is a professional plaintiff with too much knowledge to have relied on the market and the argument that Schaffer and Kreuser are inadequate class representatives because they lack sufficient personal knowledge of the facts, legal issues, and procedures underlying the claim. See generally 1 Newberg § 3.34 ("The plaintiff's knowledge has been challenged at both ends . . . . [I]t has been contended that the plaintiffs are inadequate because they are sophisticated and know too much; therefore, they could not have been victimized and cannot recover individually . . . . At the other end, the plaintiffs have been challenged as inadequate when it was shown that they were ignorant about facts . . . or ignorant about the legal theories that would be used to show liability . . . .").

20

would defer to their attorneys for strategic decisions such as those related to the dates of the proposed class period and the selection of which public statements and internal information constitute the alleged fraud. See Koenig, 117 F.R.D. at 336 ("Courts have repeatedly acknowledged that the named plaintiffs rely on attorneys to be their strategists because in complex litigation, the plaintiffs are unlikely to demonstrate mastery of the intricate details.") (citations omitted). Indeed, even under the case authority cited by the defendants, such reliance is not grounds for denial of class certification where the plaintiffs remain interested in the case, involved with counsel during litigation, and aware of their obligations to members of the proposed class. Cf. Ballan v. Upjohn, 159 F.R.D. 473, 486 (W.D. Mich. 1994) ("[I]t would be naive not to understand that many of the class actions are lawyer-driven. Nevertheless, the participation of named plaintiffs must not be 'so minimal that they have virtually abdicated to their attorneys the conduct of the case.'") (quoting Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 728 (11th Cir. 1987), cert. denied, 485 U.S. 959 (1988)); Koenig, 117 F.R.D. at 336 (named plaintiff inadequate where, inter alia, plaintiff had weak understanding of case, did not know what products the defendant sold, could not read, write, or speak English, did not meet regularly with attorney, and

21

"c[ould not] exercise independent control over his attorney.");

Greenspan v. Brassler, 78 F.R.D. 130, 133-34 (S.D.N.Y. 1978) (named plaintiffs inadequate where, inter alia, plaintiffs demonstrated "an alarming unfamiliarity" with lawsuit, appeared to have a "superfluous role" in litigation, could only identify one defendant, and did not communicate with attorney until after groundwork of action had been laid).[10]

Finally, the challenges based on the named plaintiffs' ability to finance this litigation are without merit.  New Hampshire has adopted Rule 1.8(e) of the ABA Model Rules of Professional Conduct, which provides that "[a] lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter."  N.H.

---

[10]The defendants also argue that Schaffer's prior involvement in class actions, coupled with his inability to remember the details of those cases, renders him an inadequate representative.  The arguments fails.  First, the court has already found that Schaffer has demonstrated his "willingness and ability" to prosecute this case."  Weiss, 1988 WL 20928 at * 1. Second, absent any impact on his ability to vigorously pursue this action, "most courts have soundly rejected assertions about the plaintiff's litigiousness or unrelated transactions as irrelevant factors or as representing potential positive factors supporting class status."  3 Newberg, § 3.39; see Koenig, 117 F.R.D. at 336 (challenges to class certification "Based upon details of cases not before this Court . . . is not an area of relevant inquiry.") (citing Lewis v. Black, 74 F.R.D. 1, 3 (E.D.N.Y. 1975); Kamens v. Horizon Corp., 81 F.R.D. 444, 447 (S.D.N.Y. 1979)).

Rules Prof. Conduct (1986) (adopted by reference by Local Rule 83.5, DR-1); see generally Baum v. Centronics Data Computer Corp., No. 85-363-L, 400-L, 417-L, 418-L, 1986 WL 15784 at * 5 (D.N.H. May 15, 1986) (certifying class where attorneys advanced costs of litigation and where named plaintiffs stated that, if necessary, they would shoulder expenses, at least to a certain point).[11] The plaintiffs have entered into such an agreement with counsel and, even if they personally lack the resources to finance a litigation of this magnitude, the court finds that counsels' assumption of this obligation will protect the unnamed class members and, in the event of a fee award or monetary sanction, will protect the defendants from financial loss should the defendants ultimately prevail. Moreover, it is immediately apparent from the case file that both parties have already brought considerable resources to bear in support of their respective positions. The court finds that the named plaintiffs

---

[11]The defendants' reliance on the ABA Model Code, DR 5-103(b), is erroneous because both this district and the New Hampshire state judiciary have joined the majority of jurisdictions by replacing the Model Code with the Model Rules. See Rand v. Monsanto Corp., 926 F.2d 596, 600 (7th Cir. 1991) (discussing shift to Model Rules in context of fee agreements in securities fraud class actions).

are not rendered inadequate by virtue of their financial arrangements with counsel.[12]

Accordingly, the court finds that Schaffer and Kreuser will fairly and adequately protect the interests of the class. The plaintiffs have satisfied their burden under Rule 23 and the proposed class is certified.

## IV. Class Period

The defendants also argue that, in the event the class is certified, the class period, which is proposed to run from May 12, 1994, to December 9, 1994, should be shortened to begin no later than September 13, 1994. According to the defendants, their September 13, 1994, announcement of Timberland's disappointing third quarter performance, and the resulting sixteen percent drop in the value of its stock, "effectively cured any alleged misrepresentations occurring prior to the

---

[12]Indeed, as Judge Easterbrook observed in Rand, to refuse to certify a class action on the grounds that the named plaintiff cannot, on his own, underwrite the entire litigation would frustrate the class action device:

> The very feature that makes class treatment appropriate -- small individual stakes and large aggregate ones -- ensures that the representative will be unwilling to vouch for the entire costs. Only a lunatic would do so. A madman is not a good representative of the class!

926 F.2d at 599.

announcement" and thereby corrected or reversed whatever inflationary effect prior fraudulent statements had on the stock price.  Defendants' Memorandum at 33-35; Defendants' Reply Memorandum at 9.  By this reasoning, "those who invested after the September 13, 1994 announcement -- such as Plaintiffs here -- could not have reasonably relied on alleged misrepresentations made prior to the disclosure."  Defendants' Memorandum at 35. The plaintiffs respond that the argument cannot be addressed in the context of the pending motion and, in the alternative, that the September 13, 1994, announcement was not a curative disclosure but, rather, was part of the defendants' overall common course of fraud.  Plaintiffs' Reply Memorandum at 18.

The defendants' argument is analytically similar to their truth on the market defense and, for the same reasons, cannot defeat class certification.  Although the court possesses the authority to address the propriety of the proposed class scope and period, in this case the defendants' "arguments about the commencement and termination dates of a proposed class period raise questions of fact going to the merits, and are therefore not a proper subject for inquiry at the certification stage." Weinberger v. Thornton, 114 F.R.D. 599, 606 (S.D. Cal. 1986) (citing Eisen, 417 U.S. at 178); see Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir.) (explaining why it is improper

25

for court to resolve substantial questions of fact "when deciding the scope or time limits of the class."), cert. denied, 459 U.S. 838 (1982); In re Scimed Sec. Litig., No. 3-91-575, 1993 WL 616692 at * 7 (D. Minn. Sept. 29, 1993) (acknowledging "the majority position that the issue of the appropriate commencement and termination dates for a class period . . . can be resolved only by an inquiry to the merits of the suit; such an inquiry is prohibited at the class certification stage"). The inherently factual nature of the argument is obvious: To truncate the class period for this reason the court would need to conclude, at a minimum, that the September 13, 1994, announcement effectively cured any prior fraud on the market and that the announcement was not part of an ongoing pattern of fraud. Thus, the court is at present in "a situation where a serious question remains as to the weight to be accorded the information said to be available [on or about September 13, 1994], and . . . this is an issue that can only be properly resolved at trial[,]" or, at least, at a later stage in the case. In re Western Union Sec. Litig., 120 F.R.D. 629, 641 (D.N.J. 1988). Instead, the court certifies the class period as proposed because it "comport[s] as well as is [now] ascertainable to the specific facts underlying the plaintiff[s'] theory of recovery." Id.; see In re United Telecom. Sec. Litig., No. 90-2251-O, 1992 WL 309884 at * 5 (D.

26

Kan. Sept. 15, 1992) (denying defendants' request to limit class period where, "if true, the[ plaintiffs'] allegations would support claims made by those who acquired the stock on or after" the proposed start date).

V.    Appointment of Counsel

The defendants have not challenged the adequacy of the plaintiffs' counsel.  "[R[egardless of defendant[s'] position, the court itself has an important, independent responsibility to the unnamed members of the class to make sure the class attorneys are qualified, experienced and generally able to conduct the proposed litigation."  Ballan, 159 F.R.D. at 487 (internal quotation marks omitted).

The court finds that the plaintiffs' counsel, which includes attorneys from three New York law firms and one local law firm, are qualified to represent the plaintiff class.  First, the resumes submitted by the plaintiffs indicate that each law firm and individual attorney possesses considerable expertise in the prosecution of complex securities fraud class actions.  Second, and more significantly, this expertise is evident from counsels' performance in the instant action.  As noted, supra, the plaintiffs, through counsel, have pursued this action in a timely and zealous fashion, propounding discovery at the earliest

27

opportunity and defeating an aggressive and sophisticated motion to dismiss.  See Ballan, 159 F.R.D. at 487 ("competence displayed by present performance" best demonstrates adequacy of counsel) (citations omitted).  Accordingly, the court appoints Lee Shalov of Milberg Weiss Bershad Hynes & Lerach and Jules Brody and Mark Levine of Stull, Stull, & Brody to serve as co-lead counsel on behalf of the certified class.  Edward Hahn of Backus, Meyer, Solomon & Rood shall serve as local counsel.  All counsel shall adhere to the local rules of court and shall protect the due process rights of unnamed class members.

## Conclusion

The plaintiffs' motion for class certification (document no. 19) is granted.

The class is certified as proposed in paragraph one of the certification motion.  Consistent with Rule 23, the court retains authority to alter or amend this ruling sua sponte or on the motion of either party.

The court appoints Lee Shalov of Milberg Weiss Bershad Hynes & Lerach and Jules Brody and Mark Levine of Stull, Stull, & Brody to serve as co-lead counsel on behalf of the certified class. Edward Hahn of Backus, Meyer, Solomon & Rood is appointed to serve as local counsel.

The clerk shall schedule a status conference.


SO ORDERED.


_____
Joseph A. DiClerico, Jr.
Chief Judge

March 19, 1996

cc:  Edward L. Hahn, Esquire
     Mark Levine, Esquire
     Lee S. Shalov, Esquire
     Steven E. Grill, Esquire
     John D. Donovan, Esquire
     Mark A. Michelson, Esquire